879 So.2d 1276 (2004)
STATE of Louisiana
v.
Quincy BROWN.
No. 2003-K-2788.
Supreme Court of Louisiana.
July 6, 2004.
Rehearing Denied September 3, 2004.
*1277 Charles C. Foti, Jr., Attorney General, Eddie J. Jordan, Jr., District Attorney, Donna R. Andrieu, Assistant District Attorney, for Applicant.
Clive A. Stafford Smith, New Orleans, Stephen I. Singer, for Respondent.
KNOLL, Justice.
This criminal case concerns the enhancement of a sentence under Louisiana's Habitual Offender Law; specifically, whether it is constitutionally permissible to use a juvenile adjudication, in which the juvenile had not been afforded the right to a trial by jury, to enhance his sentence for a felony committed when he is an adult. This issue raises the question of whether enhancing the sentence of the defendant on the basis of a prior juvenile adjudication is contrary to Apprendi v. New Jersey.[1]
In the present case, when defendant became an adult he committed an armed robbery for which he was convicted by a jury. The sentencing court found defendant a second felony offender as a result of his prior juvenile delinquency adjudication (attempted second-degree murder), and sentenced defendant to 198 years at hard labor without benefit of parole. The court of appeal affirmed his conviction, but reversed his sentence as constitutionally *1278 excessive and remanded the case to the trial court for re-sentencing. The court of appeal held the prior juvenile adjudication without the right to a jury trial was constitutionally inadequate under the Apprendi exception for purposes of subsequent sentence enhancement. We granted the State's application for a writ of certiorari[2] to consider this weighty issue of whether the use of juvenile adjudications to enhance a statutory penalty, where the defendant did not have the right to a jury trial, is constitutionally permissible.

FACTS AND PROCEDURAL HISTORY
The facts underlying defendant's charged and prior offenses are not relevant to the issue presented by this writ application, but for the sake of completeness we will briefly summarize the history of the case. After defendant, Quincy Brown, became an adult, he allegedly committed several felony crimes. He was charged by bill of information with two counts of attempted first-degree murder (La.Rev.Stat.14:27(30))[3], one count of armed robbery (La.Rev.Stat.14:64) and one count of simple robbery (La.Rev. Stat.14:65). He pleaded guilty to the simple robbery count and proceeded to trial on the armed robbery charge and the remaining charge of attempted first-degree murder. The jury acquitted defendant of attempted first-degree murder and convicted him of armed robbery. The trial court sentenced him to serve 99 years at hard labor without benefit of parole, probation or suspension of sentence for the armed robbery and to seven years at hard labor with benefits for the simple robbery. The sentences were ordered to run concurrently with credit for time served.
The State then charged defendant as an habitual offender pursuant to La.Rev.Stat. 15:529.1, based on a juvenile adjudication.[4] Defense counsel filed a motion to exclude evidence of the prior adjudication, arguing the use of defendant's juvenile adjudication for purposes of enhancing his sentence under La.Rev.Stat. 15:529.1 is unconstitutional. The defendant urged the use of the adjudication to enhance the sentence violated Apprendi, because in the juvenile proceeding defendant did not have the right to a jury trial. The trial court rejected the motion and found defendant a second felony offender and sentenced him to 198 years at hard labor without benefit of parole for the armed robbery conviction and a concurrent term of 14 years for the simple robbery. Defendant appealed his sentence as excessive and unconstitutional.
A unanimous panel of the appellate court affirmed the conviction, but reversed the sentence as constitutionally excessive. The court of appeal found the trial court erred in enhancing the defendant's sentence on the basis of the prior juvenile conviction. It noted the split in the federal courts of appeal on the issue of whether prior juvenile adjudications, in which the juvenile did not have the right to a jury trial, are constitutionally inadequate under the Apprendi exception for purposes of subsequent sentence enhancement. It concluded, based in part on limited guidance from this Court in State in the Interest of D.J.,[5] that juvenile adjudications *1279 without a right to a jury trial are constitutionally inadequate for purposes of subsequent sentence enhancement. State v. Brown, 02-1217, p. 12 (La. Ct.App. 4 Cir. 5/28/03), 853 So.2d 8, 15.

DISCUSSION
Louisiana's Habitual Offender Law is codified at La.Rev.Stat. 15:529.1. In this matter before us, the pertinent language of the statute provides:
A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana's Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2)[6]of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less that one-half the longest term and not more than twice the longest term prescribed for a first conviction; (Emphasis added).
The italicized language was added in 1994, when the Legislature enacted Act 23 of the Third Extraordinary Session. The digest for that act provided the proposed law would equate an adjudication of delinquency for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law or a crime of violence as a conviction for purposes of sentencing as a habitual offender.
Before we reach the issue of whether La.Rev.Stat. 15:529.1 was unconstitutionally applied in violation of the defendant's Fourteenth Amendment Due Process right, we will first address whether this constitutional issue can be resolved *1280 on statutory grounds. We have repeatedly and consistently held that courts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of the constitutional issue is essential to the decision of the case or controversy. Ring v. State, Dep't of Transp. and Dev., 02-1367, p. 4 (La.1/14/03), 835 So.2d 423, 426; State v. Fleming, 01-2799, p. 4 (La.6/21/02), 820 So.2d 467, 470.
During oral argument of this case, this court noted that subparagraph (a) of La. Rev.Stat. 15:529.1 A(1) did not refer to juvenile adjudications but only referred to convictions, notwithstanding that paragraph A(1) specifically referred to "adjudicated a delinquent." We requested post-argument briefs to address this discrepancy and specifically, whether this discrepancy would have this case resolved upon statutory grounds rather than constitutional grounds.
In post-argument brief, defendant posited because a prior adjudication of delinquency is not a felony, it cannot be used to make the current conviction a second felony under La.Rev.Stat. 15:529.1 A(1)(a). We find a statutory analysis shows notwithstanding the discrepancy in the language, the adult offense was intended to be treated as a "second felony" where the offender had only a prior juvenile adjudication.
It is a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity. State v. Carr, 99-2209, p. 4 (La.5/26/00), 761 So.2d 1271, 1274. Thus criminal statutes are given a narrow interpretation and any ambiguity in the substantive provisions of a statute as written is resolved in favor of the accused and against the State. Id. However, the rule of strict construction of penal statutes is not to be applied with "such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of the statute." State v. Everett, 00-2998, p. 12 (La.5/14/02), 816 So.2d 1272, 1279, reh'g denied, 6/21/02, quoting State v. Broussard, 213 La. 338, 342, 34 So.2d 883, 884 (La.1948). The general rule that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity applies when the court is uncertain about the statute's meaning and is "not to be used in complete disregard of the purpose of the legislature." Perrin v. United States, 444 U.S. 37, 49, n. 13, 100 S.Ct. 311, 317, 62 L.Ed.2d 199 (1979). The principle of strict construction "does not mean that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature." United States v. Levy, 579 F.2d 1332, 1337 (5th Cir.1978), cert denied, 440 U.S. 920, 99 S.Ct. 1243, 59 L.Ed.2d 471 (1979) (quoting United States v. Bramblett, 348 U.S. 503, 510, 75 S.Ct. 504, 508, 99 L.Ed.2d 594 (1955)). A criminal statute, like all other statutes, should be so interpreted as to be in harmony with, preserve, and effectuate the manifest intent of the legislature, and an interpretation should be avoided which would operate to defeat the purpose and object of the statute. Broussard, 34 So.2d at 884.
An examination of Act No. 23 clearly reveals the Legislature intended to provide that any person who had been adjudicated a delinquent for certain felony-grade violations was subject to sentence enhancement for a subsequent felony conviction. In order to effectuate this purpose, Act No. 23 did not just amend Louisiana's Habitual Offender Law (La.Rev.Stat.15:529.1), but also amended Children's Code Article 414(A), Code of Evidence Article 609.1(F) and enacted Children's Code Article *1281 412(A)(6). These revisions and enactments were necessary because the law generally provided that all records concerning proceedings in juvenile court were confidential and not to be disclosed. A reading of the transcript of the meeting of the Senate Committee on Judiciary B, in which House Bill No. 343[7] was discussed, further evidences the Legislature's intent to make juvenile adjudications subject to predicate offenses for felony sentence enhancement.
Considering the extensive revisions the Legislature made to Louisiana law, which not only included the amendment to the Habitual Offender Law but corresponding changes to the Children's Code and the Code of Evidence, it is evident the Legislature's manifest intent was to provide that any person who had been adjudicated a delinquent for certain felony-grade violations was subject to subsequent sentence enhancement for conviction of a felony. Even though Quincy Brown's conviction for armed robbery is technically not a "second felony" because his juvenile adjudication was not a first "felony," an application of the rule of lenity to this ambiguity would be an unreasonable technicality, which would defeat the purpose and object of the statute. To find that the rule of lenity prohibits sentence enhancement where the defendant was adjudicated a delinquent because the felony is not technically a "second" felony simply stretches the general rule of strict construction too far. The Court has a duty to ascertain the intent of the legislature. Under these tenets, the most logical interpretation is to find the statute provides that the felony is subject to enhanced penalties if the defendant had previously been adjudicated a delinquent. Thus we will address the constitutional issue defendant has raised.

The Constitutionality of Non-Jury Juvenile Adjudications as Predicate Offenses
A proper discussion of the constitutional issue before us must commence with the United State's Supreme Court's decision in Apprendi v. New Jersey, supra. The question before the Supreme Court was whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence be made by a jury on the basis of proof beyond a reasonable doubt. Apprendi, 530 U.S. at 469, 120 S.Ct. at 2351. The catalyst for this issue was a New Jersey hate crime statute, which authorized a judge to increase a defendant's maximum prison sentence if the trial court found by a preponderance of the evidence that in committing the crime, the defendant acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity. Charles Apprendi pleaded guilty to two counts of firearm possession for an unlawful purpose and one count of unlawful possession of an antipersonnel bomb. The trial judge imposed an enhanced sentence, finding by a preponderance of the evidence that Apprendi's actions were taken with a purpose to intimidate as provided by the statute. "The question of whether Apprendi had a constitutional right to have a jury find such bias on the basis of proof beyond a reasonable doubt [was] starkly presented." Apprendi, 530 U.S. at 476, 120 S.Ct. at 2355. The Court declared the answer was foreshadowed by its opinion in Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), construing a *1282 federal statute. "We there noted that `under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'" Apprendi, 530 U.S. at 476, 120 S.Ct. at 2355, quoting Jones, 526 U.S. at 243, n. 6, 119 S.Ct. at 1224. The Apprendi court found the Fourteenth Amendment commands the same answer in the case of a state statute. Apprendi, 530 U.S. at 476, 120 S.Ct. at 2355.
The Court ruled "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362-63. It reasoned due process required a jury to find the facts upon which a court based an enhanced sentence as an "element" of the offense at trial, rather than to allow a judge to find those facts by a preponderance of the evidence as a "sentencing factor" at a sentencing hearing. Barry C. Feld, The Constitutional Tension Between Apprendi and McKeiver: Sentence Enhancements Based on Delinquency Convictions and the Quality of Justice in Juvenile Courts, 38 WAKE FOREST L. REV. 1111, 1112 (2003). The Court exempted the fact of a prior conviction from its holding because defendants enjoyed criminal procedural safeguards, including the right to a jury trial and proof beyond a reasonable doubt, which assured the accuracy and reliability of the prior record. Id.
After Apprendi's holding that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," courts around the nation have been confronted with the question of whether a juvenile adjudication falls within the Apprendi exception for "prior convictions." The federal appellate courts have divided over the use of delinquency adjudications to enhance criminal sentences beyond the statutorily mandated maximum. The question that has divided the federal circuits is whether a prior juvenile adjudication, in which the juvenile does not have the right to a jury trial, qualifies as a "prior conviction" for purposes of the Apprendi exception. In each of these federal cases, the court reviewed the legality of using juvenile adjudications to enhance an adult sentence above a prescribed statutory maximum pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Congress has characterized juvenile adjudications as prior convictions under the ACCA. 18 U.S.C. § 924(e)(2)(B), (e)(2)(C).
The Ninth Circuit Court of Appeals became the first court in Apprendi's wake to report a published decision on this issue. Brian Thill, Comment, Prior "Convictions" Under Apprendi: Why Juvenile Adjudications May Not Be Used to Increase an Offender's Sentence Exposure if They Have Not First Been Proven To a Jury Beyond a Reasonable Doubt, 87 MARQ. L. REV. 573, 575 (2004) [hereinafter Prior Convictions]. In United States v. Tighe,[8] a divided panel held Apprendi's narrow "prior conviction" exception is limited to prior convictions resulting from proceedings that afforded the procedural necessities of a jury trial and proof beyond a reasonable doubt. 266 F.3d at 1194. In reaching this conclusion, the Tighe court noted the significant constitutional differences between adult convictions and juvenile *1283 adjudications, and inquired into the scope of the term "conviction" as used by the Supreme Court in Apprendi, and the cases[9] leading up to Apprendi. Tighe, 266 F.3d at 1192-93.
In examining the Supreme Court jurisprudence concerning the use of prior convictions as a sentencing factor, the Tighe court stated:
[I]n Jones v. United States, . . . [t]he Court explained why the fact of prior convictions was constitutionally distinct from other sentence-enhancing facts, such that it was permissible, under Almendarez-Torres, to use prior convictions to increase the possible penalty for an offense without treating them as an element of the current offense: "One basis for that constitutional distinctiveness [of prior convictions] is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense ... a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt and jury trial guarantees." Jones, 526 U.S. at 249, 119 S.Ct. [at 1227] (emphasis added). Thus, Jones' recognition of prior convictions as a constitutionally permissible sentencing factor was rooted in the concept that prior convictions have been, by their very nature, subject to the fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions: fair notice, reasonable doubt and the right to a jury trial.
One year later, in Apprendi, the ... Court explained that "the certainty that *1284 procedural safeguards attached to the `fact' of prior conviction" was crucial to Almendarez-Torres' constitutional holding regarding prior convictions as sentencing factors. Apprendi, 530 U.S. at 488, 120 S.Ct. [at 2362]. . . . "There is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." Apprendi, 530 U.S. at 496, 120 S.Ct. [at 2366].
Tighe, 266 F.3d at 1193-94.
The Tighe court found the United States Supreme Court's continued acceptance of Almendarez-Torres' holding regarding prior convictions was premised on those convictions being the product of proceedings that afford crucial procedural protections, particularly the right to a jury trial and proof beyond a reasonable doubt. Tighe, 266 F.3d at 1194. The court therefore reasoned the "prior conviction" exception to Apprendi's general rule must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Id. The court held juvenile adjudications that do not afford these due process rights do not fall within Apprendi's "prior conviction" exception. Id.
The Eighth Circuit disagreed with the Ninth Circuit's Tighe decision. In United States v. Smalley,[10] the court held juvenile adjudications can count as prior convictions for Apprendi purposes. 294 F.3d at 1033. The Smalley court rejected Tighe's analysis, "conclud[ing] that the question of whether juvenile adjudications should be exempt from Apprendi's general rule should not turn on the narrow parsing of words, but on an examination of whether juvenile adjudications, like adult convictions, are so reliable that due process of law is not offended by such an exemption." Smalley, 294 F.3d at 1033.
Noting that juvenile defendants have the right to notice, the right to counsel, the right to confront and cross-examine witnesses, the privilege against self incrimination, and that there must be a finding of guilt beyond a reasonable doubt, see In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the court found these safeguards more than sufficient to ensure the reliability Apprendi requires. Smalley, 294 F.3d at 1033. While Apprendi established what procedural safeguards were sufficient (a right to a jury trial and proof beyond a reasonable doubt), and what were not (judge-made findings under a lesser standard of proof), "the Court did not take a position on possibilities that lie in between these two poles." Id. at 1032. "[I]t is incorrect to assume that it is not only sufficient but necessary that the `fundamental triumvirate of procedural protections,' as the Ninth Circuit put it, underly [sic] an adjudication before it can qualify for an Apprendi exception." Id. The Smalley court recognized a jury does not have a role in trials for juvenile offenses, but did not think that fact undermines the reliability of such adjudications in any significant way because the use of a jury in the juvenile context would "not strengthen greatly, if at all, the fact-finding function" and is not constitutionally required. Id. at 1033, quoting McKeiver v. Pennsylvania, 403 U.S. 528, 547, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).
*1285 The Third Circuit addressed this issue, considering both the Tighe and Smalley decisions. United States v. Jones, 332 F.3d 688 (3rd Cir.2003), cert denied ___ U.S. ___, 124 S.Ct. 1145, 157 L.Ed.2d 1044 (2004). The Jones court, like the Smalley court, found nothing in Apprendi or Jones v. United States, that required holding prior nonjury juvenile adjudications, where all required due process safeguards were afforded, cannot be used to enhance a sentence under the ACCA. Jones, 332 F.3d at 696. A prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for Apprendi purposes. Id. The Supreme Court, in McKeiver, supra, held due process does not require providing juveniles with the right to a jury trial. Therefore, the Jones court held when a juvenile is adjudicated guilty beyond a reasonable doubt in a bench trial that affords all the due process protections that are required, the adjudication should be counted as a conviction for purposes of subsequent sentencing. Id.
Thus, as can be seen, following Apprendi there are two reasonable schools of thought on whether juvenile adjudications, in which the juvenile did not have the right to a jury, can properly be characterized as "prior convictions" for felony sentence enhancement purposes.[11] The State, adopting the rationale of the Smalley and United States v. Jones decisions, argues the defendant was afforded all the safeguards that were constitutionally due in his juvenile proceedings. Therefore, the adjudication was reliable for purposes of the exception under Apprendi, and its use as a predicate crime under La.Rev.Stat. 15:529.1 is proper. The defendant contends Jones v. United States and Apprendi foreclose the use of juvenile adjudications to enhance an adult sentence, where the juvenile did not have the right to a jury trial.[12] In deciding this difficult question, we turn to our recent jurisprudence concerning the juvenile justice system and scholarly works addressing this issue to assist us.
A review of the history of juvenile courts illustrates why juvenile courts have fewer procedural safeguards. The juvenile court movement began near the end of the nineteenth century because "reformers were appalled by adult procedures and penalties, and by the fact that children could be given long prison sentences and mixed in jails with hardened criminals." Jeremy Hochberg, Note, Should Juvenile Adjudications Count as Prior Convictions for Apprendi Purposes?, 45 WM. & MARY L. REV. 1159, 1172 [hereinafter Juvenile Adjudications] (quoting In re Gault, 387 *1286 U.S. 1, 15, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)). The juvenile court movement combined new ideas about children with the new ideology of social control to remove children from the criminal justice system and to provide them with individualized treatment in a separate system. Feld, supra at 1138. Under the guise of parens patriae, juvenile courts emphasized treatment, supervision, and control rather than punishment, and exercised broad discretion to intervene in the lives of young offenders. Id. Characterizing intervention as a civil or welfare proceeding completed the separation of juvenile from criminal courts and allowed greater authority to control and supervise children. Id.
Because of the rehabilitation rationale, the courts justified making the juvenile court less formal. Juvenile Adjudications, supra, at 1173. Reformers modified courtroom procedures to eliminate any implication of a criminal proceeding, adopted a euphemistic vocabulary, and endorsed a physically separate court building to avoid the stigma of adult prosecutions. Feld, supra, at 1138-39. The early reformers "believed that society's role was not to ascertain whether the child was `guilty' or `innocent,' . . . [t]he childessentially good, as they saw itwas to be made `to feel that he is the object of (the state's) care and solicitude,' not that he was under arrest or on trial." In re Gault, 387 U.S. 1, 15, 87 S.Ct. 1428, 1437, 18 L.Ed.2d 527 (1967) (citation omitted). The purpose of sanctions would be for therapeutic and rehabilitative purposes, not for retribution or incapacitation. Prior Convictions, supra, at 584.
In In re C.B. et al.,[13] with Chief Justice Calogero authoring the opinion, we addressed the constitutionality of a statute that authorized the Department of Public Safety and Corrections to transfer juveniles who had been adjudicated delinquent to adult facilities upon reaching age seventeen, to be treated for punitive purposes the same as the convicted adult felons with whom they were confined. We found the statute, La.Rev.Stat. 15:901.1, unconstitutional as applied by Regulation B-02-008 as it denied the juveniles their constitutional right to due process guaranteed them by Article I, § 2[14] of the Louisiana Constitution. In re C.B., p. 6, 708 So.2d at 395. We found it unconstitutional because they received a de facto criminal sentence to hard labor without being afforded the right to trial by jury as mandated by Article I, § 17[15] of our state constitution. Id.
In reaching this determination, we noted "the unique nature of the juvenile system is manifested in its non-criminal, or `civil' nature, its focus on rehabilitation and individual treatment rather than retribution, and the state's role as parens patriae in managing the welfare of the juvenile in state custody." Id. p. 10, 708 So.2d at 396-97 (citing, inter alia, McKeiver, supra). We reviewed the procedure this Court uses to determine which due process rights are guaranteed to juveniles. In making these determinations, an attempt is made to "strike a judicious balance by injecting procedural orderliness into the juvenile court system ... to reverse the trend whereby `the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment *1287 postulated for children.'" In re C.B., p. 12, 708 So.2d at 398 (quoting McKeiver, 403 U.S. at 545, 91 S.Ct. at 1986, quoting Kent v. United States, 383 U.S. 541, 556, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 (1966)). Based on the United States Supreme Court's reasoning in McKeiver, we previously determined due process and fundamental fairness did not require that the juvenile be granted the right to trial by jury, State in the Interest of Dino, 359 So.2d 586, 597-98 (La.1978),[16] even though that right is guaranteed by Article I, § 17 of our state constitution in certain criminal cases. In re C.B., p. 13, 708 So.2d at 398 (emphasis in original). In McKeiver, the Supreme Court determined the Sixth Amendment of the Federal Constitution did not apply in juvenile adjudications because the juvenile proceeding had not yet been held to be a "criminal prosecution" within the meaning and reach of the Sixth Amendment. McKeiver, 403 U.S. at 541, 91 S.Ct. at 1984. Among the reasons the Court gave for finding jury trials in juvenile proceedings are not constitutionally required was the imposition of a jury trial on the juvenile court system would not strengthen greatly, if at all, the fact-finding function and would tend to place the juvenile squarely in the routine of the criminal process, Id. at 547, 91 S.Ct. at 1987, from which juveniles had been removed by the reforms of the late nineteenth century. The Court was reluctant to give up on the promise of the juvenile system concept and in the belief the system could still accomplish its rehabilitative goals. Id.
Therefore when we were confronted with the constitutionality of the application of a statute that allowed adjudicated juveniles to be transferred to adult facilities, we found the statute unconstitutional as applied, holding the statute through its corresponding regulation had sufficiently tilted the scales away from a "civil" proceeding, with its focus on rehabilitation, to one purely criminal. In re C.B., p. 17, 708 So.2d at 400. Due process and fundamental fairness required that the juvenile have a jury trial if he or she was to be incarcerated at hard labor in an adult penal facility. Id. The determination in McKeiver that a jury trial was not constitutionally required in juvenile adjudications was predicated upon the non-criminal treatment of the adjudicated delinquent. In re C.B., p. 14, 708 So.2d at 399. "It therefore stands to reason that if the civil trappings of the juvenile adjudication are sufficiently subverted, then a proceeding without that safeguard is fundamentally unfair, and thus, violative of due process." Id. "The hallmark of special juvenile procedures is their non-criminal nature." Id., p. 17, 708 So.2d at 400.
We recently had cause to re-visit the issue of the right to jury trials in our juvenile justice system in State in the Interest of D.J., supra. There we reaffirmed our holding in State in the Interest of Dino, denying juveniles a constitutional right to a jury trial in delinquency proceedings. State in the Interest of D.J., p. 9, 817 So.2d at 32. The juveniles and the amici argued the policy-based analysis applied when McKeiver and Dino were decided was outdated. Id. p. 7, 817 So.2d at 30. They contended, inter alia, the amendment to the Habitual Offender Law to allow use of juvenile adjudications to enhance subsequent adult felony offenses had torn down the remaining characteristics of what traditionally identified the juvenile system.[17]
*1288 We noted we had specifically discussed these amendments in In re C.B. We found our holding in In re C.B. "significant, because it infers that the Court determined that the other statutes that `blurred the distinction' between adult and juvenile proceedings, such as the public hearing and the sentence enhancement statutes, did not offend due process requirements to such an extent that a jury trial would be required." State in the Interest of D.J., p. 10, 817 So.2d at 33. However, in finding continued viability in our Dino holding that due process does not afford a juvenile the right to a jury trial in a delinquency adjudicatory proceeding, we found further support in the fact that "notwithstanding the changes in the juvenile system ... there remains a great disparity in the severity of penalties faced by a juvenile charged with delinquency and an adult defendant charged with the same crime." State in the Interest of D.J., p. 10, 817 So.2d at 33.
Notwithstanding our finding in State in the Interest of D.J., where we inferred the sentence enhancement statutes did not offend due process requirements to such an extent that a jury trial would be required in juvenile adjudicatory proceedings, we find because juveniles do not have a right to a jury trial in these proceedings, juvenile adjudications cannot be used to enhance adult felony convictions pursuant to La.Rev.Stat. 15:529.1. We have well established that juvenile adjudications in Louisiana are sufficiently reliable, even without a jury trial, to support dispositions within the juvenile justice system. However, Apprendi has raised the issue of whether these adjudications, rendered without the right to a jury trial, are sufficiently reliable to support enhanced sentencing for adults. For the reasons that follow, we find they are not.
Under the guise of parens patriae, juvenile courts emphasize treatment, supervision, and control rather than punishment. Feld, supra, at 1138. The hallmark of special juvenile procedures is their non-criminal nature. In re C.B., p. 17, 708 So.2d at 400. Our state's juvenile system was founded upon the premise that retributive punishment was deemed inappropriate and the juvenile system dispositions should be individually tailored to address the needs and abilities of the juvenile in question. Id., p. 8, 708 So.2d at 395-96. Because of the unique nature of the juvenile system manifested in its non-criminal or "civil" nature, its focus on rehabilitation and individual treatment rather than retribution, and the state's role as parens patriae in managing the welfare of the juvenile in its custody, the United States Supreme Court held, despite disappointments, failures and shortcomings in the juvenile court system, juveniles were not constitutionally entitled to jury trials. McKeiver, 403 U.S. at 545, 91 S.Ct. at 1986.
Even though it was argued that because (1) the juvenile justice system had taken on more of the trappings of the criminal justice system; (2) the role of punishment had increased in the juvenile system; and (3) the legislative amendments opening the proceedings to the public and allowing juvenile adjudications to serve as predicate offenses for adult felony sentence enhancement, due process required juveniles receive a jury trial, we continued to uphold Dino's decree that Art. I, § 2 of our State Constitution does not afford a juvenile the right to a jury trial in a juvenile proceeding. *1289 State in the Interest of D.J., p. 13, 817 So.2d at 34. Among our reasons for our continued holding is that even with the changes in the juvenile justice system, "there remains a great disparity in the severity of penalties faced by a juvenile charged with delinquency and an adult defendant charged with the same crime." Id. p. 10, 817 So.2d at 33. To allow these adjudications to serve as "prior convictions" for purposes of sentence enhancement for adult felony offenses would lessen this disparity and contribute to "blurr[ing] the distinction between juvenile and adult procedures." In re C.B., p. 8, 708 So.2d at 396.
We find there is a difference between a "prior conviction" and a prior juvenile adjudication, and we believe the Tighe decision more closely comports with the rationale for finding juveniles are not constitutionally entitled to a jury trial. A "prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt and jury trial guarantees." Tighe, 266 F.3d at 1193 (quoting Jones v. United States, 526 U.S. at 249, 119 S.Ct. at 1227). Our holdings that due process does not require juveniles be afforded all the guarantees afforded adult criminals under the constitution have been premised upon the "civil nature" of a juvenile adjudication, its focus on rehabilitation and the state's role as parens patriae. If a juvenile adjudication, with its lack of a right to a jury trial which is afforded to adult criminals, can then be counted as a predicate offense the same as a felony conviction for purposes of Louisiana's Habitual Offender Law, then "the entire claim of parens patriae becomes a hypocritical mockery." In re C.B., p. 17, 708 So.2d at 400 (quoting Londerholm v. Owens, 197 Kan. 212, 416 P.2d 259, 269 (1966)).
A juvenile adjudication is not a conviction of any crime. In re C.B., p. 17, 708 So.2d at 400. Therefore, this adjudication should not be counted as a "prior conviction" for Apprendi purposes. The determination that a jury trial was not constitutionally required in juvenile adjudications was predicated upon the non-criminal treatment of the adjudicated juvenile delinquent. Id. p. 14, 708 So.2d at 399. It would be incongruous and illogical to allow the non-criminal adjudication of a juvenile delinquent to serve as a criminal sentencing enhancer.[18] To equate this adjudication with a conviction as a predicate offense for purposes of the Habitual Offender Law would subvert the civil trappings of the juvenile adjudication to an extent to make it fundamentally unfair and thus, violative of due process. In order to continue holding a trial by jury is not constitutionally required, we cannot allow these adjudications, with their civil trappings, to be treated as predicate offenses the same as felony convictions. It seems contradictory and fundamentally unfair to provide youths with fewer procedural safeguards in the name of rehabilitation and then to use adjudications obtained for treatment purposes to punish them more severely as adults. Feld, supra, at 1194. It is inconsistent to consider juvenile adjudications civil for one purpose and therefore not constitutionally entitled to a jury trial, but then to consider them criminal for the purpose of classifying them as "prior convictions," which can be counted as predicate offenses for purposes of the Habitual Offender Law.
*1290 We do not agree with the Smalley court and its progeny that because the procedures of juvenile adjudications are sufficiently reliable for juvenile dispositions, they are therefore reliable to "justify the much harsher consequences of their use as criminal sentence enhancements." Feld, supra, at 1190. We find, as did the Tighe court, the guidance from our United States Supreme Court indicates recidivism is distinct as a sentencing factor and therefore as an exception to the general rule that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt[,]" Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362-63, because "unlike virtually any other consideration used to enlarge the possible penalty for an offense, ... a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." Jones v. United States, 526 U.S. at 249, 119 S.Ct. at 1227 (emphasis added). Because a juvenile adjudication is not established through a procedure guaranteeing a jury trial, it cannot be excepted from Apprendi's general rule; the use of these adjudications to increase the penalty beyond the statutory maximum violates the defendant's Due Process right guaranteed by the Fourteenth Amendment of the United States Constitution.

CONCLUSION
For the foregoing reasons, we find it is unconstitutional to apply La.Rev.Stat. 15.529.1 for the purpose of allowing juvenile adjudications to be counted as predicate offenses, where these adjudications were obtained without the right to a jury trial. In our view, the use of such adjudications violates Apprendi's narrow exception, which exempts only "prior convictions" from its general rule that any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Although these adjudications can be reliably and constitutionally obtained without the right to a jury trial, this is because the juvenile proceeding is a "civil" proceeding with a focus on rehabilitation and non-criminal treatment of the adjudicated delinquent. "Prior convictions" are excepted from the Apprendi holding because they were the product of proceedings that afforded crucial procedural protectionsparticularly fair notice, the right to jury trial and proof beyond a reasonable doubt.

DECREE
The judgment of the appellate court is affirmed for the reasons expressed herein. We reverse the sentence as unconstitutional, as it violates the defendant's due process rights. The case is remanded to the trial court for re-sentencing consistent with the views expressed in this opinion.
AFFIRMED.
VICTORY, J., dissents for the reasons assigned by TRAYLOR, J.
TRAYLOR, J., dissents and assigns reasons.
TRAYLOR, Justice, dissenting.
I disagree with the majority's interpretation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and believe that a fair reading of Apprendi does not require this court to preclude the use of a juvenile adjudication to enhance an adult criminal sentence. In my opinion, United States v. Smalley, 294 F.3d 1030 (8th Cir.2002), and United States v. Jones, 332 F.3d 688 (3rd Cir. 2003), reliance on McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), which held that the *1291 right to a jury trial is not required to fulfill the fundamental fairness due process standard in a juvenile proceeding, is dispositive in this case. Accordingly, I would hold that it is constitutionally permissible to use a juvenile adjudication to enhance an adult criminal sentence where the juvenile adjudication comports with the requirements of fundamental fairness as set out in McKeiver: notice, counsel, confrontation, cross-examination, and standard of proof.
NOTES
[1] 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[2] State v. Brown, 03-2788 (La.2/6/04), 866 So.2d 805.
[3] The State later entered a nolle prosequi to one of the attempted murder counts.
[4] Previously the defendant was adjudicated a delinquent for attempted second-degree murder.
[5] 01-2149 (La.5/14/02), 817 So.2d 26. The appellate court found a footnote in State in the Interest of D.J., strongly hinted the difference in adjudication procedures might require the exclusion of such adjudications from later enhancement proceedings. Brown, p. 11, 853 So.2d at 15. Addressing the fact that before the amendment to the Habitual Offender Law allowing adjudications to enhance subsequent felony offenses, juvenile adjudications were sealed and did not follow an individual into adulthood, we noted:

In United States v. Tucker, 404 U.S. 433, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) and Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Supreme Court prohibited the use of prior convictions that were entered without the advice of counsel to enhance later sentences. In a related vein, some commentators suggest that the practice of using juvenile convictions obtained without the option to be tried by a jury to enhance adult sentences renders the juvenile justice system unconstitutional. See e.g., Sara E Kropf, Note, Overturning McKeiver v. Pennsylvania: The Unconstitutionality of Using Prior Convictions to Enhance Adult Sentences Under the Sentencing Guidelines, 87 Geo. L.J. 2149 (1999); David Dormont, Note, For the Good of the Adult: An Examination of the Constitutionality of Using Prior Juvenile Adjudications to Enhance Adult Sentences, 75 Minn. L.Rev. 1769, 1793-94 (1991). State in the Interest of D.J., p. 8, 817 So.2d at 39, n. 6.
[6] Paragraph 2 lists the following crimes: attempted first-degree murder; attempted second-degree murder; manslaughter; armed robbery; forcible rape; simple rape; second-degree kidnapping; a second or subsequent aggravated battery; a second or subsequent aggravated burglary; and a second or subsequent offense of burglary of an inhabited dwelling.
[7] House Bill No. 343 was subsequently enrolled as Act No. 23, 3rd Extraordinary Session, 1994.
[8] 266 F.3d 1187 (9th Cir.2001).
[9] The United States Supreme Court first held that prior convictions could be treated as sentencing factors that raise the maximum penalty of an offense in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Almendarez-Torres involved a statute that authorized a maximum prison sentence of two years for an alien who returned to the United States despite previous deportation, but a maximum sentence of twenty years if the initial deportation was subsequent to a conviction for an aggravated felony. The defendant argued the fact of his prior conviction, which was used to increase the statutorily mandated maximum punishment, was an element of his offense and should have been charged in the indictment. The question before the Court was "whether this latter provision defines a separate crime or simply authorizes an enhanced penalty." Id. at 226, 118 S.Ct. at 1222. The Court held it to be a penalty provision, "which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime." Id.

The next term in Jones v. United States, supra, the Court considered Almendarez-Torres's holding regarding the use of prior convictions in the context of emerging concerns about the viability of using facts not charged in the indictment nor proved to a jury beyond a reasonable doubt to increase the statutory maximum penalty to which a defendant is exposed. In Jones, the defendant was charged with carjacking in violation of 18 U.S.C. § 2119, which provides that a person possessing a firearm who takes a motor vehicle from the person or presence of another by force or intimidation shall: 1) be imprisoned not more than fifteen years; 2) if serious bodily injury results be imprisoned not more than 25 years; and 3) if death results be imprisoned for any number of years up to life. The indictment made no reference to the numbered subsections and charged none of the facts mentioned in the latter two. Defendant was told at the arraignment that he faced a maximum 15 year sentence for carjacking, and the jury instructions at his trial defined that offense by reference solely to § 2119(1). The trial judge, after determining that one of the victims suffered serious bodily injury, imposed a 25 year sentence. The defendant argued that serious bodily injury was an element of the offense that had neither been pleaded in the indictment nor proven to the jury. The United States Supreme Court held the carjacking statute established three separate offenses by the specification of distinct elements, each of which must be charged by indictment and proven to a jury beyond a reasonable doubt. Jones v. United States, 526 U.S. at 252, 119 S.Ct. at 1228.
[10] 294 F.3d 1030 (8th Cir.2002), cert denied 537 U.S. 1114, 123 S.Ct. 870, 154 L.Ed.2d 790 (2003).
[11] We have found the sole state supreme court addressing this issue is Kansas. That court was presented with the question of whether the absence of the jury trial safeguard in juvenile adjudications was enough to remove it from the narrow exception for prior convictions built into the Apprendi rule. State v. Hitt, 273 Kan. 224, 42 P.3d 732, 736 (2002), cert. denied 537 U.S. 1104, 123 S.Ct. 962, 154 L.Ed.2d 772 (2003). It held juvenile adjudications are included within the historical cloak of recidivism and enjoy ample procedural safeguards and therefore, are encompassed within the Apprendi exception. Id. at 740.
[12] Additionally, the defendant strenuously argues a majority on the United States Supreme Court appears to have moved rapidly away from the position taken in Almendarez-Torres that recidivism "does not relate to the commission of the offense, but goes to the punishment only, and therefore ... may be subsequently decided [by a judge]." 523 U.S. at 244, 118 S.Ct. at 1231. We decline the invitation to speculate as to what the Court's position is, or may become, on treating recidivism as a factor in sentence enhancement, and restrict ourselves to the guidance thus far provided by the Court's holdings.
[13] 97-2783 (La.3/4/98), 708 So.2d 391.
[14] Article I, § 2 provides: "No person shall be deprived of life, liberty, or property, except by due process of law."
[15] Article I, § 17 of the Louisiana Constitution is our state counterpart to the Sixth Amendment of the Federal Constitution which grants the right to trial by jury to certain criminal defendants.
[16] cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), rev'd on other grounds, State v. Fernandez, 96-2719 (La.4/14/98), 712 So.2d 485.
[17] The other legislative amendment argued to have torn down the remaining characteristics of what traditionally identified the juvenile system was the amendment to La. Ch.Code art. 407(A), opening to the public all proceedings in juvenile delinquency cases involving crimes of violence.
[18] While we note sentencing courts frequently refer to and consider a defendant's juvenile record when imposing a statutory sentence for a proscribed crime, that is not the same as counting these adjudications as predicate offenses for the purpose of imposing the harsher mandatory sentence required by Louisiana's Habitual Offender Law.