STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

25-516

STATE OF LOUISIANA

VERSUS

DERRICK JERMAINE COTLONG

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NUMBER 3518-24
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

**********

CLAYTON DAVIS
JUDGE

**********

Court composed of Shannon J. Gremillion, Ledricka J. Thierry, and Clayton Davis, Judges.

THIERRY, J. dissents and assigns written reasons.

REVERSED.

**Stephen C. Dwight, District Attorney**
**David S. Pipes, Assistant District Attorney**
**Fourteenth Judicial District Court**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**stephen@dwightlaw.com**
**dpipes@cpdao.org**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**Annette Roach**
**P.O. Box 6547**
**Lake Charles, LA 70606**
**(337) 436-2900**
**aroach@roachandroach.com**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Derrick Jermaine Cotlong**

**DAVIS, Judge.**

The defendant was charged with violation of a protective order, second offense, in violation of La.R.S. 14:79(B)(2) and two counts of resisting a police officer with force or violence, in violation of La.R.S. 14:108.2(A)(4). A jury found the defendant guilty of all charges. He appeals only his conviction of violation of a protective order. For the following reasons, the defendant's conviction is overturned.

## FACTS

Early in the morning of October 18, 2023, the defendant walked into an elementary school office asking to see his daughter, N.C.[1] The school knew that N.C.'s profile contained a protective order restricting the defendant's contact with her and that N.C.'s mother had sole custody. Therefore, the school's principal and resource officer were notified of the defendant's presence on campus. When they arrived, the defendant was told he could not see his daughter. He then became aggressive, calming down only when the resource officer turned on her bodycam. He was then escorted out.

The resource officer testified that the defendant said, "I'm gonna [sic] see my child today. It's not a threat, it's a promise. I'm going to tear this school up." The school contacted the sheriff's department because of this outburst. A deputy responded, but when he arrived, the defendant had already left. Deputies found him about a mile from the school, where he threatened them and was not compliant.

The school informed Tamera Cotlong, N.C.'s mother, of the situation. As a result, she checked N.C. out of school. She was concerned because the defendant had no custody rights, and was subject to a restraining order.

---

[1]The victim's initials have been used to identify her in accordance with La.R.S. 46:1844(W).

1

After learning her father had been on campus, N.C. refused to eat. Ms. Cotlong described N.C. as "scared, of course, the whole cycle of paranoia set back in. She was sad. She didn't want to eat, very clingy, and then once we got the call that he was arrested she needed reassurance and she didn't want to go back to school." Overall, N.C. regressed emotionally from the incident.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. We find no errors patent.

## ASSIGNMENTS OF ERROR

1. The evidence was insufficient to support the conviction of violation of a protective order, second offense. The evidence failed to establish that defendant abused or harassed N.C. when he asked to see her but was denied;

2. The trial court committed manifest error when it denied the defense's request that the definition of "harassment" be given to the jury;

3. The trial court erred in allowing the State to admit other crimes, wrongs, bad acts evidence where the evidence was stale and not of a similar character as the offense charged at trial because the other crimes evidence concerned actions by defendant toward the mother and the offense on trial concerned the violation of a protective order for the child only.

## LAW AND ANALYSIS

**ASSIGNMENT OF ERROR NO. 1**

The defendant argues that the evidence was insufficient to support the conviction of violation of a protective order, second offense. Specifically, the evidence failed to establish that defendant abused or harassed N.C. when he was denied the right to see her.

The analysis for claims challenging the sufficiency of trial evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. [citations omitted] It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. [citation omitted] In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The statute proscribing violation of a protective order is La.R.S. 14:79, which states in pertinent part:

Violation of protective orders is the willful disobedience of a preliminary or permanent injunction or protective order issued pursuant to R.S. 9:361 et seq., R.S. 9:372, R.S. 46:2131 et seq., R.S. 46:2151, R.S. 46:2171 et seq., R.S. 46:2181 et seq., Children's Code Article 1564 et seq., Code of Civil Procedure Articles 3604 and 3607.1, or Code of Criminal Procedure Articles 320 and 871.1 after a contradictory court hearing, or the willful disobedience of a temporary restraining order or any ex parte protective order issued pursuant to R.S. 9:361 et seq., R.S. 9:372, R.S. 46:2131 et seq., R.S. 46:2151, R.S. 46:2171 et seq., criminal stay-away orders as provided for in Code of Criminal Procedure Article 320, Children's Code Article 1564 et seq., or Code of Civil Procedure Articles 3604 and 3607.1, if the defendant has been given notice of the temporary restraining order or ex parte protective order by service of process as required by law.

On December 16, 2021, an order of protection was issued against the defendant as part of his sentencing order for his earlier plea to domestic abuse child endangerment. The following orders were checked and initialed by the sentencing court:

1. YOU ARE ORDERED NOT TO abuse, harass, assault, stalk, follow, track, monitor, or threaten the protected person, [N.C.]

   This prohibition includes the use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury.

2. YOU ARE ORDERED NOT TO contact the protected person personally, through a third party, or via public posting, by any means, including written, telephone, or electronic (text, email, messaging, or social media) communication.

3. YOU ARE ORDERED NOT TO go within <u>100 yards</u> (distance) of the protected person.

4. YOU ARE ORDERED NOT TO contact the protected person's immediate family* personally, through a third party, or via public posting, by any means, including written, telephone, or electronic (text, email, messaging, or social media) communication. (*immediate family = spouse, mother, father, aunt, uncle, sibling, or child of the offender whether related by blood, marriage, or adoption)

5. YOU ARE ORDERED NOT TO go within one hundred (100) yards of the residence or household of the protected person.

6. YOU ARE ORDERED NOT TO go to the protected person's school, or the protected person's place of employment.

The sentencing order's expiration date was listed as "Does Not Expire." However, other than a few exceptions discussed below, protective orders expire by operation of law, even when the trial court orders them not to expire. La.R.S. 46:2136(F) provides (emphasis added):

> (1) Except as provided in Paragraph (2) of this Subsection, **any final protective order or approved consent agreement shall be for a fixed period of time, not to exceed eighteen months**, and may be extended by the court, after a contradictory hearing, in its discretion. Such protective order or extension thereof shall be subject to a devolutive appeal only.
>
> (2)(a) For any protective order granted by the court which directs the defendant to refrain from abusing, harassing, or interfering with the person as provided in R.S. 46:2135(A)(1), the court may grant the order to be effective for an indefinite period of time as provided by the provisions of this Paragraph on its own motion or by motion of the petitioner. **The indefinite period shall be limited to the portion of the protective order which directs the defendant to refrain from abusing, harassing, or interfering with the person as provided in R.S. 46:2135(A)(1).**

4

The event in this case was more than eighteen months after the protective order was issued, when most of it had expired. Given that a protective order may only last indefinitely if it directs a defendant to "refrain from abusing, harassing, or interfering with the person," these were the only elements in effect when the defendant showed up at N.C.'s school. Also, the protective order prevents the defendant from harassing or abusing N.C., but not from "interfering." We cannot read "interfering" into the protective order.

The State argued that "[w]hile the Defendant focuses his attention on whether his actions amounted to 'harassment,' it is clear that the Defendant's actions very much interfered with the daily life and routine of the seven-year-old victim and were psychologically abusive." However, the State's Bill of Particulars is limited to harassment. "It is a well-settled proposition that the state is limited in its proof to the facts recited in the bill of particulars." *State v. Odom*, 07-516, p. 12 (La.App. 1 Cir. 7/31/08), 993 So.2d 663, 672 n.5.

Defendant was not prohibited from contacting N.C. He was, however, prohibited from harassing her. The Domestic Abuse Assistance Laws, La.R.S. 46:2131, et seq., do not define harassment. Black's Law Dictionary (12th ed. 2024) defines harassment as "[w]ords, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose; purposeful vexation."

In *Culp v. Culp*, 42,239, pp. 6–7 (La.App. 2 Cir. 6/20/07), 960 So.2d 1279, 1282–83, the second circuit discussed whether the record supported a finding of domestic abuse as defined in in both La.R.S. 46:2131, et seq., and La.Ch. Code art. 1564, et seq., stating:

Family arguments that do not rise to the threshold of physical or sexual abuse of violations of the criminal code are not in the ambit of the Domestic Abuse Assistance Law. *Rouyea* [*v. Rouyea*], [00-2613 La.App. 1 Cir. 3/28/01), 808 So.2d 558]; *Harper v. Harper*, 537 So.2d 282 (La.App. 4th Cir.1988).

Plaintiff emphasizes that the definition uses the phrase "includes, but is not limited to" and argues that this language expands the scope of domestic abuse to include general harassment. We disagree. We are mindful that the courts could quickly be overwhelmed if every unpleasant child custody exchange or contentious relationship between former spouses warranted a TRO or protective order. The kind of parent bickering and child manipulation that the record reflects occurring between the parents in the case *sub judice* is simply beyond the scope of this statute. La.R.S. 46:2131 emphasizes that the purpose of the statute is to equalize the treatment of crimes between family members and those between strangers. It further emphasizes the need to protect victims from violent behavior. Those purposes reflect that the D.A.A. has a limited reach. We cannot agree, therefore, that the statute embodies Plaintiff's claims of general harassment by Defendant, nor do the Defendant's actions as contained in the record constitute an offense against a person as defined by the Criminal Code.

We must keep in mind that the Louisiana Supreme Court has found:

It is a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity. Thus criminal statutes are given a narrow interpretation and any ambiguity in the substantive provisions of a statute as written is resolved in favor of the accused and against the State.

*State v. Brown*, 03-2788, p. 6 (La. 7/6/04), 879 So.2d 1276, 1280 (citation omitted).

The rule of strict construction, however, should not be applied so technically that it is unreasonable and defeats the purpose of statutory construction rules to begin with, which is to attempt to uncover and enforce the true intent and meaning of the statute. *Id.*

Here, the facts show that the defendant walked up to the school unannounced and in violation of his custody order. The facts show that he threatened and put innocent school employees in fear. The facts show that he became a trespasser when he did not leave after being asked to do so.

6

However, the record does not reflect that the State has satisfied its burden of proving that defendant harassed N.C. He never saw or spoke to N.C. He did not do anything in her presence, and he did not intentionally send her any communication. N.C. was only informed that he had been at her school after he had left. Defendant did not return or attempt to communicate with N.C. in any way after she was alerted to his presence. Additionally, the record does not reflect that he intentionally engineered a situation to harm or upset his daughter, but rather, the reactions of third parties to defendant's rash and frightening behavior were the ultimate vehicle for N.C.'s distress.

While the family history and N.C.'s testimony show that N.C. would have been appreciably worse off had she seen her father that day, the defendant's poor judgment and impulsiveness did not amount to this particular crime at that particular time.

Violation of a protection order requires "willful disobedience" under La.R.S. 14:79. Therefore, it requires more than the fact alone that a protected individual subjectively felt harassed or abused. Additionally, the jury was instructed that attempted violation of a protective order was a responsive verdict. *See* La.Code Crim.P. art. 815. However, an attempt requires specific intent:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La.R.S. 14:27(A). The State did not prove the defendant had the specific intent to harass N.C. when he went to her school and asked to see her. Thus, the evidence is not sufficient to support a responsive verdict.

**ASSIGNMENTS OF ERROR NOS. 2 AND 3**:

The defendant's second and third assignments of error are moot based on our ruling above on assignment of error number one.

## DISPOSITION

Defendant's conviction of second offense violation of a protective order in violation of La.R.S. 14:79(B)(2) is overturned and his sentence set aside.

**REVERSED.**

STATE OF LOUSIANA

VERSUS

DERRICK JERMAINE COTLONG

**********

**THIERRY, J. dissents and assigns written reasons.**

I respectfully dissent from the majority's conclusion that the evidence was insufficient to support the jury's verdict that Defendant intentionally violated the protective order in place. The State noted in its brief, "[w]hile the Defendant focuses his attention on whether his actions amounted to 'harassment' it is clear that the Defendant's actions very much interfered with the daily life and routine of the seven-year-old victim and were psychologically abusive." I agree. While the order in effect inexplicably left out any reference to "interfering" with N.C., and the majority noted "we cannot read 'interfering' into the protective order," the testimony was undisputed that defendant's actions in showing up at N.C.'s school on October 18, 2023, set in a motion a chain of events that unquestionably resulted in psychological abuse to N.C, and as such violated the protective order.

Although N.C. did not come in contact with Defendant on that date, she was aware of the incident. She was checked out of school by her mother and saw police on the scene (whose presence was necessitated by Defendant's aggressive and threatening behavior to school staff). Her mother testified N.C. was extremely scared as a result and the "whole cycle of paranoia set back in." It is imperative to note that during an incident on October 27, 2020, when Defendant forcibly entered the home of N.C.'s godparents, N.C. hid in a closet and listened to Defendant

violently and physically abuse her mother, which led to Defendant being convicted on a domestic abuse child endangerment charge. Ms. Cotlong testified the incident at her school made N.C. extremely sad, overly clingy and she refused to eat in the days following the incident. Although she previously enjoyed going to school, which her mother described as her safe place, the incident made her very reluctant to return to school, and she had to be reassured that she would be safe there. N.C.'s classmates were aware that police had been called to school and questioned N.C. about the incident, which caused her further distress and embarrassment. Her grades suffered as a result of the incident. Ms. Cotlong testified N.C. regressed emotionally, was triggered by any loud noises and was scared to ride her bike outside in the aftermath of the incident.

That N.C. never physically came in contact with Defendant or was unaware of his presence until after the fact does not lessen the effect of the Defendant's intentional act in going to a place where he knew he was not legally entitled to be. The effects were undeniably traumatic and detrimental to seven-year-old N.C and amounted to significant psychological abuse.

The majority notes that violation of a protection order requires "willful disobedience" under La.R.S. 14:79. Importantly, the jury was made aware of texts demonstrating Defendant's anger over not seeing his daughter, which led to him making overt threats against the mother and gave an indication of his mindset that he was entitled to see his daughter regardless of any legal deterrent, even a validly issued protective order. One text specifically asked "Is [N.C.] going to school?" Another also read, "I'm coming with the Sheriff and the FBI. You won't learn, huh. I tried calling, B. I will not call you to see my daughter. I have just as much right as you do, Fat Bitch." The jury likely concluded these texts demonstrated the "willful disobedience" required under La.R.S. 14:79.

Viewing the evidence in the light most favorable to the prosecution, I believe the jury did not err in finding Defendant intentionally violated the protective order in place. Therefore, I would affirm Defendant's conviction of violation of a protective order, second offense.