DAVID S. GORBATY, Judge.
 

 I,John E. Watts appeals his conviction for violation of La. R.S. 15:542, to-wit: failure to register as a sex offender. For the following reasons, we affirm the conviction, vacate the sentence, and remand for resentencing in accordance with this opinion.
 

 STATEMENT OF CASE:
 

 On November 2, 2007, the State filed a bill of information charging the defendant with failure to register as a sex offender, a violation of La. R.S. 15:542
 
 [1]
 
 , |2after being
 
 *629
 
 convicted on December 17, 1993, of sexual exploitation of a minor in Clark County, Washington (Case Number 93-1-01019-2). He pleaded not guilty.
 

 Following trial on March 26, 2009, the jury found the defendant guilty as charged, and he was subsequently sentenced to three and one-half years hard labor with credit for time served.
 

 This appeal follows.
 

 STATEMENT OF FACT:
 

 The State called Detective Raymond Hughes, who testified that he is a twelve year veteran of the New Orleans Police Department assigned to the Sex Crimes Unit for the past six years. The detective explained that the Sex Crimes Unit investigates sexual assaults and that he has been handling sex offender registrations and sex offender violations since Hurricane Katrina. Detective Hughes stated that during his career he has registered hundreds of sex offenders. He explained that prior to Katrina, sex offenders registered in Orleans Parish at Police Headquarters on South Broad Street. After Katrina, from November 2005 through December 2006, registration was set up at the Probation and Parole Office on St. Charles Avenue and also at the First District Police Station located on North Rampart Street. When a sex offender inquired about registration, the NOPD Communications Division would either notify the Sex Crimes Unit with the ^information given by the offender and the Sex Crimes Unit would contact the offender and set up registration, or the offender would be directed to the First District Station on North Rampart at a set time to register. A sex offender could reach the Communications Division by calling either the non-emergency number or the emergency number and be directed to the proper NOPD division. A sex offender could make contact with the correct NOPD division by simply asking any police officer the offender may encounter. Flyers with Detective Hughes’ telephone number were distributed to each police station for a sex offender to make contact. Approximately 212 sex offenders successfully registered in New Orleans in 2006. For the 2007 calendar year, the location of sex offender registration moved to 401 City Park Avenue. At the time of that change, all departments of the NOPD were notified. Again, any police officer could have obtained this information by simply calling the Communications Division, and the offender could call either the emergency or the non-emergency police numbers and receive the correct information concerning registration. In 2007, there were 322 registered sex offenders in the City of New Orleans.
 

 In August 2007, Detective Hughes learned that the defendant was residing in New Orleans and began a registration violation investigation. His investigation led him to contact the jurisdiction where the defendant was convicted of a sex offense to determine whether the defendant was required to register in New Orleans. Detective Hughes learned that the defendant had a sex offense conviction from Clark County in Washington state. Hughes learned from the Clark County Sheriff
 
 *630
 
 that the defendant was in fact a sex offender and that the defendant was required to register in New Orleans, although the defendant had never done so. Detective Hughes identified State’s Exhibit 1 as the Certified Conviction Plea of Guilty Form |4executed by the defendant in Clark County, bearing case number 93-1-01019-2, evidencing the defendant’s plea to three counts of sexual exploitation. Hughes further stated that section P of the guilty plea form explained to the defendant that he had the duty to register as a sex offender in other jurisdictions. Reading from Section llof the guilty plea form, Detective Hughes quoted from the defendant’s statement to the Washington court:
 

 
 *629
 
 (g) Aggravated crime against nature (R.S. 14:89.1).
 

 
 *630
 
 The Judge has asked me to state briefly in my own words what I did that makes me guilty. This is my statement:
 

 In Clark County Washington, in August 1993, I knowingly aided SMR, date of birth 3/5 83; TEE, date of birth 12/24/81; and SMA, date of birth 9/30/82 to engage in sexually explicit conduct knowing such conduct would be photographed, this was done with a sexual motivation.
 

 Detective Hughes stated that the foregoing statement was signed by the defendant.
 

 Further detailing his investigation of the defendant, Detective Hughes stated that he interviewed Janet and Alan Molero, who lived across the street from the defendant. The Moleros informed him that the defendant had lived in the neighborhood seven to eight months. Checking official records, the detective discovered that at no time prior to August 2007 was the defendant a registered sex offender in Orleans Parish. On August 30, 2007, Hughes drove to the defendant’s house where he observed the defendant exiting a pickup truck, at which time Hughes arrested the defendant for failure to register as a sex offender. Detective Hughes identified the defendant in court as the man he arrested. Hughes stated that the defendant properly registered within a week of his arrest.
 

 NOPD Officer George Jackson testified on behalf of the State as an expert in taking, examining, comparing and analyzing fingerprints. Officer Jackson stated that he fingerprinted the defendant in court prior to the start of trial and identified State’s Exhibit 2 as the set of those inked fingerprints. Continuing, the officer Ifiidentified State’s Exhibit 3 as a Sex/Kidnapping Offender Registration Form. State’s Exhibit 3 contains the defendant’s name, the date of conviction as 12/17/93, the charge of Sexual Exploitation of a Minor and fingerprints. Officer Jackson compared State’s Exhibit 2 with State’s Exhibit 3 and determined that prints on those exhibits were identical and belonged to the defendant.
 

 Next, Ms. Wilhelmina (Linda) Herring testified for the State and stated that she was a thirty-two year Entergy employee working in the Records Retention and Billing Department. Ms. Herring produced records compiled from Entergy’s billing department which pertained to the defendant’s utility account with Entergy from September 12, 2006 through 2007. Those records were identified as State’s Exhibit 4.
 

 Mr. Alan Molero testified that he lived across the street from the defendant on Marcia Avenue in New Orleans. Further, Mr. Molero identified the defendant in court as his former neighbor. Mr. Molero said that the defendant’s wife lived with the defendant at the Marcia Street address. He also stated that he saw the defendant on a regular basis at the Marcia Street address between August of 2006 and August of 2007. Although Mr. Molero did not know the defendant well, they did
 
 *631
 
 go fishing together. Mr. Molero stated that the defendant was active in community functions, worked as an electrical contractor and owned his own business. Mr. Molero also knew that the defendant went to Washington from time to time.
 

 Mrs. Janet Molero testified and corroborated her husband’s testimony. Mrs. Molero said that she saw the defendant on a daily basis, either going to or coming from work and knew from the defendant’s wife that the defendant would return to Washington every three to four months for approximately two weeks. She also |6said that she and her husband occasionally socialized with the defendant and his wife.
 

 Attorney William Slaughter testified on behalf of the defense and said that he had been a practicing attorney for almost forty years, engaged primarily in a criminal law practice. He told the court that the defendant came to see him for a consultation on May 4, 2007, concerning advice on his registering as a sex offender. Mr. Slaughter reviewed the law on sex offender registration with the defendant and determined that the defendant was required to register in Orleans Parish. Mr. Slaughter stated that because of the disruption caused by Hurricane Katrina, he was never able to determine where and with what police division the defendant should register. Eventually, Mr. Slaughter was given the name and phone number of Sgt. Wayne Cordova. Mr. Slaughter placed a call to the sergeant but got the sergeant’s voice mail. He left a message but never received a return call from Sgt. Cordova. Mr. Slaughter advised the defendant to stay in touch with him, which the defendant did. After trying unsuccessfully other avenues to determine how and where the defendant should register, Mr. Slaughter advised the defendant to speak with the Washington police for guidance. The next time Mr. Slaughter heard anything from the defendant was when the defendant’s wife called him and said that the defendant had been arrested. The defendant retained Mr. Slaughter as counsel. Mr. Slaughter spoke with an assistant district attorney in magistrate court, reviewed the police report and ascertained the name of the officer who handled sex offender registrations.
 

 Under cross-examination, the prosecutor had Mr. Slaughter examine the Bell South Yellow Pages phone book in service from February 2007 to July 2007. Mr. 17SIaughter noted the various phone numbers listed for the NOPD but could not say which, if any of the numbers listed, he called.
 

 The defendant testified and informed the jury that he had a 1993 conviction for sexual exploitation in Vancouver, Washington and a 1981 Oregon conviction for sexual abuse. The defendant testified that he came to the city to participate in the rebuilding process after Hurricane Katrina. The defendant and his wife bought the house on Marcia Avenue and owned two homes in Washington. He never intended to live in the city permanently, but the volume of work kept them here. His vehicles are registered in the State of Washington, which is also the place of issuance of his driver’s license. The defendant said he made several attempts to register in Orleans Parish but could never determine where to do so. The defendant went to the police office at Tulane and Broad but found the building closed. He also went to the police station on Moss Street, but those officers could not tell him where to register. The defendant then contacted Mr. Slaughter for advice; however, Mr. Slaughter’s inquiries went unanswered. Finally, the defendant called Sgt. Cordova and left a message but never received a return call from the sergeant. The defendant stated that in his last conversation
 
 *632
 
 with Mr. Slaughter prior to his arrest, Mr. Slaughter told him that the NOPD apparently was not concerned about the registration and for him not to worry. The defendant said Mr. Slaughter told him that if he had any trouble to call him for help.
 

 Under cross examination, the defendant admitted to his prior sex offense convictions, three counts of sexual exploitation of a juvenile and three counts of sexual abuse, and that he knew he was required to register here as a sex offender. The defendant identified his Plea of Guilty Form from 1993 and his signature thereon. He stated that he and his wife bought their Marcia Avenue home in ^September 2006, which is when the power was turned on. The defendant admitted that he did not call either the NOPD’s emergency or non-emergency telephone numbers.
 

 Detective Raymond Hughes was recalled by the State to testify that many of the 212 people who registered as sex offenders in New Orleans in 2006 and many of the 322 people who registered in 2007 were from out-of-state.
 

 ERRORS PATENT:
 

 A review for errors patent on the face of the record reveals one. The penalty for failure to register as a sex offender under La. R.S. 15:542.1.4 mandates a fíne of not more than one thousand dollars in addition to a term of incarceration. However, in sentencing the defendant, the trial court failed to impose a fine. Accordingly, the defendant’s sentence is illegally lenient. In
 
 State v. Williams,
 
 03-0302 (La. App. 4 Cir. 10/6/03), 859 So.2d 751, this court held that a reviewing court must remand cases for the imposition of a mandatory fíne where the trial court failed to do so. Thus, this case must be remanded to the trial court for the imposition of the mandatory fine.
 

 ASSIGNMENTS OF ERROR NOS. 1 AND 2:
 

 By his first two assignments, the defendant argues that the trial court erred by denying his Motions to Quash.
 
 [2]
 
 Both motions advanced arguments that the defendant contends relieve him of the duty to register as a sex offender in Louisiana.
 

 The defendant’s first Motion to Quash argued that he was improperly charged with violating a Louisiana law which is not “equivalent” to the crime he committed in Washington.
 

 The State charged the defendant with indecent behavior with juveniles/pornography involving juveniles. La. R.S. 14:81 and 14:81.1.
 

 Louisiana Revised Statute 14:81 provides in pertinent part:
 

 Indecent behavior with juveniles
 

 A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
 

 (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense; or
 

 (2) The transmission of an electronic textual communication or an electronic visual communication depicting lewd or lascivious conduct, text, or images to any person reasonably believed to be under
 
 *633
 
 the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.
 

 La. R.S. 14:81.1(A) provides:
 

 Pornography involving juveniles
 

 A. Pornography involving juveniles is any of the following:
 

 (1) The photographing, videotaping, filming, or otherwise reproducing visually of any sexual performance involving a child under the age of seventeen.
 

 (2) The solicitation, promotion, or coercion of any child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing visually any sexual performance involving a child under the age of seventeen.
 

 (3) The intentional possession, sale, distribution, or possession with intent to sell or distribute of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen.
 

 (4) The consent of a parent, legal guardian, or custodian of a child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing visually any sexual performance involving the child.
 

 |10B. For purposes of this Section the following definitions shall apply:
 

 (1) “Sexual performance” means any performance or part thereof that includes sexual conduct involving a child under the age of seventeen.
 

 (2) “Performance” means any play, motion picture, photograph, dance, or other visual presentation.
 

 (3) “Sexual conduct” means actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals.
 

 (4)“Promote” means to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, prevent, exhibit, or advertise, or to offer or agree to do the same.
 

 C. Possession of three or more of the same photographs, films, videotapes, or other visual reproductions shall be pri-ma facie evidence of intent to sell or distribute.
 

 D. Lack of knowledge of the juvenile’s age shall not be a defense.
 

 E. (1) Whoever commits the crime of pornography involving juveniles shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than two years or more than ten years, without benefit of parole, probation, or suspension of sentence.
 

 (2) Whoever commits the crime of pornography involving juveniles by violating the provisions of Paragraph (A)(2) of this Section on a victim under the age of thirteen years when the offender is seventeen years of age or older, shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than life imprisonment. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
 

 (3) Upon completion of the term of imprisonment imposed in accordance with Paragraph (2) of this Subsection, the offender shall be monitored by the Department of Public Safety and Corrections through the use of electronic monitoring equipment for the remainder of his natural life.
 

 
 *634
 
 R.C.W. 9.68A.040, WA Legis (1989) Chapter 32, the statute under which the defendant was convicted in Washington, provides:
 

 (1) A person is guilty of sexual exploitation of a minor if the person:
 

 (a)Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance;
 

 _J_y(b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance; or (c) Being a parent, legal guardian, or person having custody or control of minor, permits the minor to engage in sexually explicit conduct, knowing that the conduct will be photographed or part of a live performance.
 

 (2) Sexual exploitation of a minor is a class B felony punishable under chapter 9A.20 RCW.
 

 R.C.W. 9.68A.011, which provides definitions, reads:
 

 Unless the context clearly indicates otherwise, the definitions in this section apply throughout this chapter.
 

 (1) To “photograph” means to make a print, negative, slide, digital image, motion picture, or videotape. A “photograph” means anything tangible or intangible produced by photographing.
 

 (2) “Visual or printed matter” means any photograph or other material that contains a reproduction of a photograph.
 

 (3) “Sexually explicit conduct” means actual or simulated:
 

 (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;
 

 (b) Penetration of the vagina or rectum by any object;
 

 (c) Masturbation;
 

 (d) Sadomasochistic abuse for the purpose of sexual stimulation of the viewer;
 

 (e) Exhibition of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer;
 

 (f) Defecation or urination for the purpose of sexual stimulation of the viewer; and
 

 (g) Touching of a person’s clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.
 

 (4) “Minor” means any person under eighteen years of age.
 

 (5) “Live performance” means any play, show, skit, dance, or other exhibition performed or presented to or before an audience of one or more, with or without consideration
 

 R.C.W. 9A.20.021 (entitled “maximum sentences for crimes committed July 1, 1984, and after”) provides in pertinent part:
 

 1) Felony. Unless a different maximum sentence for a classified felony is specifically established by a statute of this state, no person convicted of a classified felony shall be punished by confinement or fine exceeding the following:
 

 i * * *
 

 (b) For a class B felony, by confinement in a state correctional institution for a term of ten years, or by a fine in an amount fixed by the court of twenty thousand dollars, or by both such confinement and fine....
 

 
 *635
 
 The defendant argues that the Washington statute under which he was convicted is not “equivalent” to Louisiana’s law because the age of the victim protected by each state’s statute are different-in Louisiana the age limit is seventeen, whereas in Washington the age limit is eighteen. He further contends that because the statutes are not “equivalent” the rule of lenity should be applied in his favor.
 

 In
 
 State v. Shaw,
 
 06-2467 (La.11/27/07), 969 So.2d 1233, the Louisiana Supreme Court summarized the pertinent law relating to the interpretation of criminal statutes:
 

 [W]e begin our analysis with the proposition that the starting point in the interpretation of any statute is the language of the statute itself.
 
 Johnson,
 
 03-2993 at 11, (La. 10/19/04), 884 So.2d 568] 884 So.2d at 575;
 
 Theriot v. Midland Risk Insurance Company,
 
 95-2895 (La.5/20/97), 694 So.2d 184, 186;
 
 Touch-ard v. Williams,
 
 617 So.2d 885, 888 (La. 1993). Our interpretation of the language of a criminal statute is governed by the rule that the articles of the criminal code “cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.” LSA-R.S. 14:3;
 
 State v. Skipper,
 
 04-2137, p. 3 (La.6/29/05), 906 So.2d 399, 403. Further, although criminal statutes are subject to strict construction under the rule of lenity,
 
 State v. Carr,
 
 99-2209, p. 4 (La.5/26/00), 761 So.2d 1271, 1274, the rule is not to be applied with “such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of the statute.”
 
 State v. Everett,
 
 00-2998, p. 12 (La.5/14/02), 816 So.2d 1272, 1279, quoting
 
 State v. Broussard,
 
 213 La. 338, 342, 34 So.2d 883, 884 (La.1948) See
 
 State v. Brown,
 
 03-2788, pp. 5-6 (La.7/6/04), 879 So.2d 1276, 1280, quoting
 
 Perrin v. United States,
 
 444 U.S. 37, 49 n. 13, 100 S.Ct. 311, 317, 62 L.Ed.2d 199 (1979) (“The general rule that ambiguity concerning the ambit of criminal statutes should be | ^resolved in favor of lenity applies when the court is uncertain about the statute’s meaning and is ‘not to be used in complete disregard of the purpose of the legislature.’ ”). Consequently, a criminal statute, like all other statutes, should be interpreted so as to be in harmony with and to preserve and effectuate the manifest intent of the legislature; an interpretation should be avoided which would operate to defeat the object and purpose of the statute.
 
 Brown,
 
 03-2788 at 6, 879 So.2d at 1280;
 
 Broussard,
 
 34 So.2d at 884. What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will.
 
 State v. Williams,
 
 00-1725, p. 13 (La.11/28/01), 800 So.2d 790, 800. Therefore, where the words of a statute are clear and free from ambiguity, they are not to be ignored under the pretext of pursuing their spirit. LSA-R.S. 1:4;
 
 State v. Freeman,
 
 411 So.2d 1068,1073 (La.1982).
 

 Id.,
 
 006-2467, pp. 14-15, 969 So.2d at 1242.
 

 If the statute is clear and unambiguous, then it is to be applied as written.
 
 State v. Carr,
 
 99-2209 (La.5/26/00), 761 So.2d 1271.
 

 It is a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity.
 
 State v. Carouthers,
 
 618 So.2d 880, 882 (La.1993). Thus,
 
 *636
 
 criminal statutes are given a narrow interpretation and any ambiguity in the substantive provisions of a statute as written is resolved in favor of the accused and against the State.
 
 State v. Becnel,
 
 93-2536, p. 2 (La.5/31/96), 674 So.2d 959, 960;
 
 Chevalier v. L.H. Bossier,
 
 95-2075, p. 6 (La.7/2/96), 676 So.2d 1072, 1076 (citing
 
 State v. Piazza,
 
 596 So.2d 817, 820 (La.1992)). The principle of lenity is premised on the idea that a person should not be criminally punished unless the law provides a fair warning of what conduct will be considered criminal.
 
 State v. Piazza,
 
 596 So.2d 817, 820 (La.1992) (citing 3 N. Singer, Sutherland Statutory Construction § 59.04 (Sands 4th ed.1986)). The rule is based on principles of due process that no person should be forced to guess as to whether his conduct is prohibited.
 
 Id.
 
 (citing
 
 Dunn v. United States,
 
 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979)).
 

 Id.,
 
 99-2209, pp. 4-5 (La.5/26/00), 761 So.2d 1271,1274.
 

 The principle of lenity directs that a court construe a criminal statute in favor of the most narrow application when there are serious doubts concerning a meaning of a term.
 
 State v. Amos,
 
 02-1547 p. 8 (La.6/18/03), 849 So.2d 498, 503, fn. 2. It is unnecessary to resort to the rule of lenity when there is no 114ambiguity in the statute or the intent of the legislature.
 
 Shaw,
 
 06-2467, p. 19, 969 So.2d at 1244.
 

 The State of Washington’s legislative will with regard to its enactment of laws against exploitation of children, Washington Revised Code 9.68A.001 is expressed as follows:
 

 The legislature finds that the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance. The care of children is a sacred trust and should not be abused by those who seek commercial gain or personal gratification based on the exploitation of children.
 

 The legislature further finds that the protection of children from sexual exploitation can be accomplished without infringing on a constitutionally protected activity. The definition of “sexually explicit conduct” and other operative definitions demarcate a line between protected and prohibited conduct and should not inhibit legitimate scientific, medical, or educational activities.
 

 Similarly, in
 
 State v. Fussell,
 
 06-2595, (La.1/16/08), 974 So.2d 1223, the Louisiana Supreme Court considered the legislative intent of La. R.S. 14:81.1:
 

 Through its enactment of La. R.S. 14:81.1, the legislature intended to prevent any child from ever being victimized by punishing equally any of four types of offenders for each action that contributes to that child’s sexual exploitation ... Simply stated, preventing any child from being sexually victimized is the end to be achieved, and punishing both producers and consumers of child pornography equally is the legislature’s chosen means by which to achieve this end.
 

 Id,
 
 06-2595, p. 19, 974 So.2d at 1235.
 

 Black’s Law Dictionary, (8th ed.2004) defines equivalent as: “Equal in value, force, amount, effect, or significance. 2. Corresponding in effect or function; nearly equal; virtually identical.” Comparing Washington’s and Louisiana’s statutes and both states’ legislative intent behind their respective legislative’s laws against exploitation of children reveals a common purpose in | -^protecting minors from criminal sexual conduct visually depicted. This assignment of error is meritless.
 

 In his second Motion to Quash, the defendant argues that La. R.S. 15:542 did
 
 *637
 
 not provide for a registrar in Orleans Parish, as the statute references the “chief of police,” an office which does not exist in New Orleans. Alternatively, the defendant argues that because the population of New Orleans fell below 450,000 people, the State did not prove that he had to register with the “police department.”
 

 This assignment has no merit. A plain reading of La. R.S. 15:542 indicates that a sex offender must register with the police authority in the parish or municipality in which he resides, regardless of its population. Some parishes in Louisiana recognize sheriffs as heads of their police departments, as in Jefferson Parish, while some municipalities located within parishes maintain their own police departments, as is the case with Kenner in Jefferson Parish, which recognizes its own chief of police. The defendant’s argument, that in the absence of reference to the term “Superintendent of Police” in the statute, the City of New Orleans is left without a registrar through whom sexual predators and offenders may be tracked, strains logic. The terms “chief of police” and “sheriff’ do not exhaust the titles of police heads around the State of Louisiana. A common sense reading of the terms shows they apply to the police authority located in each jurisdiction. Therefore, Orleans Parish was not without a registrar after Katrina, and the defendant was not excused from registering simply because the population decreased after Katrina. The New Orleans Police Department was and still is the authority through which registration must be made in Orleans Parish.
 

 | ^ASSIGNMENT OF ERROR NO. 3:
 

 In a third assignment, the defendant charges error in the trial court’s denial of his Motion in Arrest of Judgment because it erroneously concluded that La. R.S. 15:542 is constitutional even though it does not contain the element of criminal intent.
 

 Criminal statutes are subject to strict construction under the rule of lenity.
 
 State v. Brown,
 
 03-2788 (La.7/6/04), 879 So.2d 1276,1280. As such, criminal statutes are narrowly interpreted and any ambiguity in the substantive provisions of a statute is resolved in favor of the accused.
 
 Id.
 
 The rule of strict construction is not to be applied with “such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of the statute.”
 
 Id.
 

 Statutes are generally presumed to be constitutional, and the party challenging the validity of the statute bears the burden of proving it is unconstitutional.
 
 State v. Fleury,
 
 01-0871, p. 5 (La.10/16/01), 799 So.2d 468, 472. Unlike the federal constitution, a state constitution’s provisions are not grants of power, but instead are limitations on the otherwise plenary power of the people of a state, exercised through its legislature.
 
 Bd. Of Comm’rs of N. Lafourche Conservation, Levee & Drainage Dist. v. Bd. Of Comm’rs of Atchafalaya Basin Levee Dist.,
 
 95-1353, p. 3 (La.1/16/96), 666 So.2d 636, 639. Therefore, the legislature may enact any legislation the state constitution does not prohibit.
 
 Id.
 
 Moreover, the Louisiana Supreme Court has consistently held that legislative enactments are presumed valid and their constitutionality should be upheld when possible.
 
 State v. Caruso,
 
 98-1415, p. 1 (La.3/2/99), 733 So.2d 1169, 1170 (citing
 
 State v. Griffin,
 
 495 So.2d 1306, 1308 (La.1986)). Accordingly, as a result of this 117presumption, if a party wishes to challenge the constitutionality of a statute, the party must do so properly.
 

 
 *638
 
 While there is no single procedure for attacking the constitutionality of a statute, it has long been held that the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized.
 
 State v. Schoening,
 
 00-0903, p. 3 (La.10/17/00), 770 So.2d 762, 764. The challenger’s burden is a three step analysis. First, a party must raise the unconstitutionality in the trial court; second, the unconstitutionality of a statute must be specially pleaded; and third, the grounds outlining the basis of unconstitutionality must be particularized.
 
 State v. Hatton,
 
 07-2377, p. 13 (La.7/1/08), 985 So.2d 709, 719.
 

 Examining this case, the defendant has met the first two requirements to challenge the constitutionality of La. R.S. 15:542. As to the grounds outlining the basis of unconstitutionality, the defendant contends that by the trial court’s failure to recognize intent as an element of the crime of failure to register as a sex offender, the court ruled that the statute imposes strict criminal liability on the defendant. As such the statute is unconstitutional because first, it creates a passive crime, meaning the offender commits a crime without doing anything and second, because the crime is a felony, the law mandates intent as an element of the offense.
 

 In support of his argument, the defendant cites
 
 State v. Brown,
 
 389 So.2d 48 (La.1980), citing a passage from
 
 Morissette v. United States,
 
 342 U.S. 246, 250-251, 72 S.Ct. 240, 243-244, 96 L.Ed. 288 (1952) in which the United States Supreme Court observed:
 

 The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and | iRpunishment for a harmful act is almost as instinctive as the child’s familiar exculpatory “But I didn’t mean to,” and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone’s sweeping statement that to constitute any crime there must first be a ‘vicious will’.
 
 [3]
 

 Id.,
 
 389 So.2d at 50.
 

 However,
 
 State v. Brown, supra,
 
 also recognized that strict liability offenses do exist in the criminal law and do not in all instances offend constitutional requirements.
 

 Louisiana Revised Statute 14:8(2) defines criminal conduct as “[a] mere act or failure to act that produces criminal consequences, where there is no requirement of criminal intent [.]” This article expressly recognizes that certain conduct is criminal in the absence of intent. The Louisiana Supreme Court considered this issue in
 
 State v. Terrell,
 
 352 So.2d 220 (La.1977), in which the defendant claimed that “a statute cannot constitutionally create a crime where the criminal consequences, or the result condemned, is merely a result or an effect totally independent of any intentional conduct on the part of the offender.” 352 So.2d at 221. In
 
 Terrell,
 
 the defendant was charged with failure to file a tax
 
 *639
 
 return which punished the failure to file without consideration of the offender’s intent in omission. The court distilled the defendant’s argument stating:
 

 Although the argument shrouds the issue in semantics, it amounts to a claim that criminal conduct requires intent to do or fail to do something. The argument is specifically answered by Article 8(2) of the Criminal Code (La.Rev. Stat.l4:8(2)). In defining criminal conduct the article states that it may consist of “(a) mere act or failure to act that produces criminal consequences, where there is no requirement of criminal intent.”
 

 |19A crime may therefore be enacted where there is no requirement of criminal intent when there is a failure to act which produces criminal consequences.
 

 Id.,
 
 352 So.2d at 221.
 

 The legislature has imposed criminal consequences for the failure to comply with Louisiana’s sex offender registration law. The record in this case establishes that the defendant knew that not registering in Louisiana would produce criminal consequences. He spoke with law enforcement officials in Washington regarding the procedures and the necessity of registering with Louisiana law enforcement authorities. While the trial court noted the efforts made by the defendant in attempting to comply with registration requirements, it also noted that the defendant failed to register for almost a year, and then only after he was arrested. The record also shows that the defendant was notified of his duty to register when he pled guilty to the charge of sexual exploitation of a minor in 1993 in Washington. Accordingly, the trial court did not err in finding La. R.S. 15:542 constitutional.
 

 ASSIGNMENTS OF ERROR NOS. 3, 4, 5 AND 6:
 

 In his next four assignments of error, the defendant contends that intent is an element required to prove the defendant’s guilt for the instant offense and that the trial court erred in failing to charge the jury that the State had the burden to prove the defendant intended not to register as a sex offender in Louisiana.
 

 As discussed in the previous assignments of error, La. R.S. 14:8 plainly recognizes that certain conduct is criminal even in the absence of criminal intent. Additionally, La. R.S. 14:11 provides that in some crimes “no intent is required.” While offenses that dispose of a scienter requirement are not favored, the United States Supreme Court has noted that the legislatures’ authority to define a criminal lapoffense includes the power to “exclude elements of knowledge and diligence from its definition.”
 
 Lambert v. California,
 
 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1958). See also
 
 Potvell v. Texas,
 
 392 U.S. 514, 545, 88 S.Ct. 2145, 2160, 20 L.Ed.2d 1254 (1968) (Black, J. concurring) (“[Ljegislatures have always been allowed wide freedom to determine the extent to which moral culpability should be a prerequisite to conviction of a crime.”). The Louisiana Legislature has determined that specific or general intent is not a necessary element of every crime. La. R.S. 14:8. Therefore, proof of whether the defendant’s failure to register as a sex offender was intentional plays no part in determining the defendant’s guilt of the instant offense.
 

 Because intent is not an element necessary to prove the defendant’s guilt, it follows that the trial court did not err by refusing to instruct the jury that the State bore the burden of proof of the defendant’s intent to violate Louisiana’s sexual offender registration law.
 

 Under La.Code Crim. Proc. art. 802(1), the trial court is required to charge the
 
 *640
 
 jury “as to the law applicable to the case.” In charging the jury, the trial judge read to the jury the provisions of La. R.S. 15:542 and the definition of a “sex offense” under La. R.S. 15:541(14.1). Further, the trial judge advised the jury:
 

 A person accused of a crime is presumed by our law to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. It is the duty of you, the jury, in considering the evidence and applying to that evidence the law as given by this Court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case. It is the duty of you, the jury, if not convinced of the guilt of the defendant beyond a reasonable doubt, to find him not guilty. The defendant is not required to prove his innocence, but may rest upon the presumption of innocence. The presumption holds unless it is overthrown by positive, affirmative proof presented by the State.
 

 The burden, therefore, is upon the State to establish to your satisfaction and beyond a reasonable doubt, the guilt of the defendant - as to the crime charged. If you entertain a reasonable doubt as to any fact or element necessary to constitute the guilt of the defendant, it is your sworn |2iduty to give the defendant the benefit of that doubt and return a verdict of not guilty. If the State has proven guilt of the defendant, you should return a verdict of guilty. While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt, ladies and gentlemen, is doubt based upon reason and common sense ...
 

 A trial error is harmless when a reviewing court is convinced that the error was harmless beyond a reasonable doubt.
 
 Chapman v. California,
 
 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The state has the burden of demonstrating that the trial error did not contribute to defendant’s conviction. If a reviewing court finds that the trial record establishes guilt beyond a reasonable doubt, the interest of fairness has been satisfied and the judgment should be affirmed.
 
 Rose v. Clark,
 
 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).
 

 In this case, the trial judge properly charged the jury as to the State’s burden of proof in this case. Based upon the law and facts adduced at trial, if there was any error in the jury charge, the defendant’s conviction was not attributable to any such error.
 
 See Sullivan v. Louisiana,
 
 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The volume of evidence against the defendant, as examined in the two remaining assignments of error, proves the defendant guilty of violating the Louisiana sexual offender registration law. La. R.S. 15:542. These assignments have no merit.
 

 ASSIGNMENTS OF ERROR NOS. 7 AND 8:
 

 In his last two assignments of error, the defendant charges that the evidence is insufficient for the jury to find that he was required to register as a sex offender and that he failed to register with the legal registrar.
 

 In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational ^trier-of-fact that all of the elements of the crime have been proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, when circumstantial evidence forms the
 
 *641
 
 basis of the conviction, the evidence, “assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438; see
 
 State v. Jacobs,
 
 504 So.2d 817, 820 (La.1987) (all direct and circumstantial evidence must meet the
 
 Jackson v. Virginia
 
 test);
 
 State v. Porretto,
 
 468 So.2d 1142, 1146 (La.1985) (La. R.S. 15:438 mandates that “all evidence both direct and circumstantial, must be sufficient under
 
 Jackson
 
 to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.”).
 

 In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction.
 
 State v. Jones,
 
 97-2591, p. 7 (La.App. 4 Cir. 9/8/99), 744 So.2d 165, 169. The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witness. Thus, the reviewing court may impinge on the fact-finder’s discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State v. Harris,
 
 02-1589, p. 4 (La.5/20/03), 846 So.2d 709, 713,
 
 citing State v. Mussall,
 
 523 So.2d 1305, 1310 (La.1988).
 

 In order to prove the defendant guilty of violating La. R.S. 15:542, the State must prove that the defendant pled guilty or was convicted of a sex offense, that he resided in Louisiana for the period during which he was required to register and that he failed to register within the requisite time allotted for registration. La. R.S. 15:542(0(2).
 

 | gjThe State satisfied its burden of proof through the testimony of its witnesses and the evidence.
 

 Detective Raymond Hughes testified that in 2007, he received information that the defendant was an unregistered sex offender living in Orleans Parish. His investigation revealed that the defendant had been living in Orleans Parish since September 2006 and that the defendant had not registered as a sex offender at the time of his arrest in August 2007. In conjunction with Detective Hughes’ testimony, the State produced the Certified Conviction Plea of Guilty Form executed by the defendant in Clark County, Washington bearing case number 93-1-01019-2, evidencing the defendant’s plea to three counts of sexual exploitation. The plea form clearly advised the defendant that he must register as a sex offender in other jurisdictions. Negating the defendant’s assertion that Orleans Parish had no registrar with whom to register his status, Detective Hughes verified that numerous sex offenders, many from out of state, registered in Orleans Parish during 2006 and 2007. Further, Ms. Herring, the Entergy representative, confirmed that company records indicated that the defendant was a paying customer for power to his residence from September 12, 2006 into 2007. Finally, the defendant’s neighbors, Mr. and Mrs. Alan Molero, testified that the defendant lived in their neighborhood since approximately September 2006. They testified that he was an active member of the neighborhood and community, enjoying neighborhood barbecues and fishing trips with Mr. Molero. In spite of the many visits the defendant made to their home, during which the Moleros’ children and grandchildren were in attendance, the Moleros were never informed the defendant was a convicted sex offender.
 

 ^Considering the evidence and testimony adduced at trial, any rational jury could have found the evidence sufficient to prove that the defendant was guilty beyond a reasonable doubt of failing to register as a sex offender in Orleans Parish.
 

 
 *642
 
 CONCLUSION:
 

 Accordingly, for the reasons set forth herein, we affirm the conviction. The sentence, however, is vacated, and this case is remanded for the trial court to impose a sentence in compliance with La. R.S. 15:542.1.4.
 

 CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RE-SENTENCING.
 

 [1]
 

 . La. R.S. 15:542 A(l) as it read in 2007 when the defendant was charged, provided in pertinent part:
 

 A. (1) Any adult residing in this state who has pled guilty to, has been convicted of, or where adjudication has been deferred or withheld for the perpetration or attempted perpetration of any sex offense and any juvenile who has pled guilty or has been convicted of a sex offense as provided for in Children’s Code Article 857 shall register with the sheriff of the parish of each of the person’s residences if there is more than one, and with the chief of police if the address of any of the person's residences is located in an incorporated area which has a police department. If the adult or juvenile resides in a parish with a population in excess of four hundred fifty thousand, he shall register with the police department of his municipality of residence.
 

 La. R.S. 15:542 in its current form provides in pertinent part:
 

 Registration of sex offenders and child predators
 

 A. The following persons shall be required to register and provide notification as a sex offender or child predator in accordance with the provisions of this Chapter:
 

 (1) Any adult residing in this state who has pled guilty to, has been convicted of, or where adjudication has been deferred or withheld for the perpetration or attempted perpetration of, or any conspiracy to commit either of the following:
 

 (a) A sex offense as defined in R.S. 15:541, with the exception of those convicted of felony carnal knowledge of a juvenile as provided in Subsection F of this Section;
 

 (b) A criminal offense against a victim who is a minor as defined in R.S. 15:541;
 

 (2) Any juvenile who has pled guilty or has been convicted of a sex offense or second degree kidnapping as provided for in Children’s Code Article 305 or 857, with the exception of simple rape; and
 

 (3) Any juvenile, who has attained the age of fourteen years at the time of commission of the offense, who has been adjudicated delinquent based upon the perpetration, attempted perpetration, or conspiracy to commit any of the following offenses:
 

 
 *629
 
 (a) Aggravated rape (R.S. 14:42).
 

 (b) Forcible rape (R.S. 14:42.1).
 

 (c) Second degree sexual battery (R.S. 14:43.2).
 

 (d) Aggravated kidnapping of a child who has not attained the age of thirteen years (R.S. 14:44).
 

 (e) Second degree kidnapping of a child who has not attained the age of thirteen years (R.S. 14:44.1).
 

 (f) Aggravated incest involving circumstances defined as an "aggravated offense” (R.S. 14:78.1).
 

 [2]
 

 . The defense sought writs on the unfavorable rulings on the Motion to Quash and this Court denied writs in both instances. See
 
 State v. John E. Watts,
 
 unpub., 2008-0537 (La.App. 4 Cir. 6/10/2008) and
 
 State v. John E. Watts,
 
 unpub., 2008-1062 (La.App. 4 Cir. 10/21/2008).
 

 [3]
 

 . The "vicious will” has been replaced with less colorful descriptions of the mental state required for a criminal act; nevertheless, intent generally remains an indispensable element of a criminal offense.
 
 Brown,
 
 389 So.2d at 50.