960 So.2d 1279 (2007)
Larry G. CULP, Plaintiff-Appellant,
v.
Tonya Courson CULP, Defendant-Appellee.
No. 42,239-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
Rehearing Denied August 9, 2007.
*1280 Sockrider, Bolin, Anglin, & Batte by D. Rex Anglin, Shreveport, Kenneth L. Harper, for Appellant.
Hammonds & Sills by Linda K. Ewbank, Jon Guice, Baton Rouge, for Appellee.
Before WILLIAMS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant Larry G. Culp appeals the trial court's grant of a protective order against him on the petition of his ex-wife, Tonya Courson[1] ("Plaintiff"), on her behalf and on behalf of their minor child. According to Plaintiff, Defendant harassed her repeatedly culminating when Defendant "flung" his belt at both her and the child. After hearing testimony from both parties, the trial court granted several provisions of Plaintiff's requested protective order, denied others and, notably, did not alter Defendant's visitation rights. From this judgment, Defendant appeals. For the reasons set forth below, we reverse.

FACTS
The parties divorced in 2001 and have one minor child. According to their court-ordered custody arrangement, the child lives with Plaintiff and Defendant has visitation rights. The parties have had strained and contentious interactions with each other. The main incident that preceded the petition for protective order was on October 14, 2006, when Defendant fetched a belt from his car and allegedly directed it at Plaintiff and then the child ("the belt incident"). Both parties gave different versions of this incident at the protective order hearing.
Defendant submitted that he arrived at Plaintiff's residence to pick up the six-year old child for his scheduled visitation on Friday, October 13, 2006. The child was in Plaintiff's car when Defendant pulled up. Plaintiff informed Defendant that the child did not wish to go with him for the visitation, at which point Defendant got the belt from his truck and "showed" it to the child from 20 feet away. According to Defendant, he then proceeded to put the belt on. He denied whipping it at either Plaintiff or the child. He asserts that, in fact, the child "died laughing" because Defendant had never whipped the child. After picking up the child and taking him to his car, Defendant testified that the child told him Plaintiff had promised to take the child to the store for a tape. Defendant claims this was a further attempt by Plaintiff to alienate him from his child and was the true reason the child was upset with leaving his mother's residence.
Plaintiff submits a different version of the belt incident. She asserts that, when Defendant arrived at her home to pick up the child, she and the child were still in her car after having just arrived home. The child was reluctant to go with his father and bolted from her car to hide in the back yard. Defendant, in reaction, *1281 took a belt from his car and flung it at Plaintiff and then the child. She maintains they were closer than 20 feet. The trial court concluded that Defendant was 14 feet from Plaintiff during the belt incident.
As a result of this incident, on the following Tuesday, October 17, 2006, Plaintiff filed her petition seeking a protective order for both her and the child. She alleged that Defendant stalked them, threatened them with bodily harm and threatened them with a weapon. She also included a lengthy description of the belt incident and other harassment she experienced. She sought a temporary restraining order prohibiting Defendant from abusing, harassing, stalking, following, or threatening her and her child; prohibiting him from any contact with her and the child; prohibiting him from going within 100 yards of her residence except to drive to his residence in the same subdivision; and ordering him not to damage any property of hers. In addition, she sought temporary custody of the child and a prohibition on Defendant interfering with that custody. She also requested that, if the protective order is granted, Defendant be ordered to seek professional counseling and to pay costs of court, attorney fees, evaluation fees, expert witness fees and any medical cost for her and the child associated with the alleged abuse. Finally, she requested that Defendant undergo blood tests for steroids.
The hearing officer immediately issued a temporary restraining order (TRO) granting all of Plaintiff's requested prohibitions against Defendant. The hearing on whether the TRO should be converted to a protective order was scheduled for November 2, 2006. The hearing officer granted Plaintiff's motion for continuance, but reinstated Defendant's visitation under the supervision of Defendant's in-laws. The TRO remained in effect until the trial court issued its final order on November 9, 2006, after taking testimony and evidence. Defendant had filed a motion seeking to dissolve the TRO, which was not heard until the actual trial.
At the trial on the petition, the trial court confirmed that the hearing would not extend to a custody hearing of the child. At trial, over counsel for Defendant's objection as irrelevant, the trial court allowed testimony from Leigh Anne Murry, Defendant's former girlfriend. Ms. Murry denied that Defendant ever physically abused her or abused steroids. During her testimony, Plaintiff played a tape of a conversation between Ms. Murry and Plaintiff, which Plaintiff had secretly taped. In the excerpts played at the hearing, Ms. Murry told Plaintiff that Defendant used steroids, repeatedly called her, would lose his temper and had threatened one of her male friends. In her testimony, however, Ms. Murry minimized her comments stating that she exaggerated them because she had been mad at Defendant because he had recently broken up with her and that she had herself engaged in similar behavior directed at him. She also testified that Defendant had never threatened or hit her and had never seen him strike the child. She also testified that she had discovered that what she suspected were steroids were actually a different legal substance.
Plaintiff also played a taped phone conversation between the child and Plaintiff in which the child was "negotiating" between his parents. Defendant was demanding, through the child, that Plaintiff apologize for some undisclosed offense and agree that Defendant could pick up the child from school in return for Plaintiff being able to pick up the child that night. The child was with Defendant for visitation, including staying the night. Plaintiff secretly taped the phone call. Defendant's counsel objected to both tapes as irrelevant *1282 and outside the scope of the pleadings.
The trial court gave extensive oral reasons for judgment in which it stressed that it was not altering the civil custody arrangement and that it would go back into effect the next day. It did not discuss the testimony or taped conversations of Ms. Murry. It further found that the belt incident did not constitute either a battery or an assault. The trial court did find, however, that the evidence supported a finding of harassment on the part of Defendant toward Plaintiff and the child. Particularly stressed by the trial court was the phone conversation in which the child was given the phone to negotiate for his father's visitation. As a result, the trial court found that the statute entitled Plaintiff to a protective order. It carefully denied, however, all those requests for relief that affected custody or visitation matters and all those it found unsupported by the record.
The trial court, therefore, on the Louisiana Uniform Abuse Prevention Order, a standard form, granted a narrow range of prohibitions. The resulting protective order ordered Defendant not to abuse, harass, stalk, follow or threaten Plaintiff or the child. It ordered Defendant not to contact Plaintiff or the child with the handwritten notation "for purposes of harassment." It further ordered Defendant not to go within 100 yards of Plaintiff's home, with the handwritten provision, "except to go by to and from his home or to exercise visitation rights by picking the child up and dropping him off." The court ordered Defendant to pay court costs and $1,500 in attorney fees. From this judgment, Defendant appeals.

DISCUSSION
The trial court issued the TRO and final protective order under the Domestic Abuse Assistance Laws (D.A.A.) contained in both La. R.S. 46:2131, et seq., and Louisiana Children's Code article 1564, et seq. At issue in the case sub judice is whether the record supports the finding of domestic abuse as defined by both statutes. While worded slightly differently, the source of the definition of domestic abuse in La. Ch. C. art. 1565 is taken directly from La. R.S. 46:2131. Comments to La. Ch. C. Art. 1565. We, therefore, discuss the two sources of authority for the TRO and protective order together.
We review domestic protective orders for abuse of discretion. Rouyea v. Rouyea, 00-2613 (La.App. 1st Cir.3/28/01), 808 So.2d 558. La. R.S. 46:2131, et seq., provides protection in the form of TROs and protective orders for persons subject to domestic abuse. Domestic abuse is further defined by La. R.S. 46:2132(3), in pertinent part, as:
includes, but is not limited to physical or sexual abuse, and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation committed by one family or household member against another.[2]
Family arguments that do not rise to the threshold of physical or sexual abuse of violations of the criminal code are not in the ambit of the Domestic Abuse Assistance Law. Rouyea, supra; Harper v. Harper, 537 So.2d 282 (La.App. 4th Cir. 1988).
Plaintiff emphasizes that the definition uses the phrase "includes, but is not *1283 limited to" and argues that this language expands the scope of domestic abuse to include general harassment. We disagree. We are mindful that the courts could quickly be overwhelmed if every unpleasant child custody exchange or contentious relationship between former spouses warranted a TRO or protective order. The kind of parent bickering and child manipulation that the record reflects occurring between the parents in the case sub judice is simply beyond the scope of this statute. La. R.S. 46:2131 emphasizes that the purpose of the statute is to equalize the treatment of crimes between family members and those between strangers. It further emphasizes the need to protect victims from violent behavior. Those purposes reflect that the D.A.A. has a limited reach. We cannot agree, therefore, that the statute embodies Plaintiff's claims of general harassment by Defendant, nor do the Defendant's actions as contained in the record constitute an offense against a person as defined by the Criminal Code.
The only incident complained of that arguably falls within the scope of the D.A.A. is the belt incident discussed above. The trial court found that the belt incident constituted neither battery nor assault. We cannot say the trial court abused its discretion in so finding. Accordingly, we find that the record contains insufficient evidence of domestic abuse under the D.A.A. and, therefore, that the trial court abused its discretion in ordering a TRO and protective order against Defendant. We decline to award Defendant attorney fees under La. C.C.P. art. 3608.

CONCLUSION
For the reasons set forth above, the protective order issued against Defendant, Larry G. Culp, is reversed. The request of Defendant for attorney fees is denied. Costs of this appeal are assessed to Plaintiff.
REVERSED.
APPLICATION FOR REHEARING
Before WILLIAMS, GASKINS, CARAWAY, PEATROSS and DREW, JJ.
Rehearing denied.
DREW, J., would grant rehearing.
NOTES
[1] The docket is styled under the name "Tonya Courson Culp" because the protective order proceedings were filed into the parties' divorce proceedings styled "Culp v. Culp." In her briefing, however, Plaintiff goes by Tonya Courson.
[2] Article 1565(1) of the Children's Code defines domestic abuse as, "includes but is not limited to physical or sexual abuse and any offense against the person as defined in Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950, except negligent injury and defamation, committed by one family or household member against another."