NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-46


REBECCA DAVIS

VERSUS

DAMIEN WILLIAMS


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 250,822
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ELIZABETH A. PICKETT
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

**Cooks, J., concurs in the result.**


REVERSED.


**Leo J. "Trey" Flynn, III**
**Hesser & Flynn, L.L.P.**
**2820 Jackson Street**
**Alexandria, LA 71303**
**(318) 542-4102**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Damien Williams**

**Rebecca Davis**
**In Proper Person**
**179 Wildwood Drive**
**Pineville, LA 71360**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
     **Rebecca Davis**

**PICKETT, Judge.**

The defendant appeals the trial court's issuance of a protective order against him in favor of the plaintiff, as provided by the Domestic Abuse Act, La.R.S. 46:2131-2143. For the following reasons, we reverse the issuance of the protective order.

**FACTS**

On August 18, 2014, Rebecca Davis filed a petition for protection from abuse. In her petition, Ms. Davis named Damien Williams as defendant, asserting that she and Mr. Williams previously lived together in Rapides Parish and have a child together. Ms. Davis alleged that on August 15, 2014,[1] Mr. Williams sent her death threats via phone calls to her and messages via Facebook and text to her husband, stating that she was going to die and that he was going to murder her. She also alleged that due to Mr. Williams's past actions, she was afraid of him. Ms. Davis alleged that Mr. Williams had previously slapped, punched, choked, shoved, and stalked her and that he had previously threatened her with bodily harm, threatened her life, threatened her with a weapon, and held her hostage. She requested a temporary restraining order (TRO) prohibiting Mr. Williams from abusing, threatening, stalking, and contacting her in any manner, including through a third person, and prohibiting him from going within 100 yards of her residence, from going to her place of employment, and ordering him to pay court costs. The requested TRO was issued that same day.

Mr. Williams appealed the TRO, and on August 29, 2014, Ms. Davis and Mr. Williams appeared before a hearing officer for a hearing. The parties and

---

[1]During the proceedings, an issue was raised as to whether the alleged abuse occurred on August 15 or 16, 2014. The date on which the alleged abuse occurred does not affect our decision herein; therefore, we use the date set forth in Ms. Davis's petition.

Terald Davis, Ms. Davis's husband, testified at the hearing. At the conclusion of the hearing, the hearing officer found that Mr. Williams threatened Ms. Davis with bodily harm and used abusive, threatening language via text and phone. He extended the TRO seventy-five days and ordered the parties to return to court on November 7, 2014. The hearing officer recommended that the parties were to contact each other by text only; however, in the case of an emergency, contact could be made by phone. He further recommended that Mr. Williams be ordered to pay all court costs.

Mr. Williams appealed the hearing officer's recommendation, and a hearing was held before the trial court on October 3, 2014. At the conclusion of the hearing, the trial court issued a protective order ordering Mr. Williams:

1) NOT TO abuse, harass, stalk, follow, or threaten the protected person(s) in any manner whatsoever. This prohibition includes the use, attempted use, or threatened use of force or physical violence that would reasonably be expected to cause bodily injury.

2) NOT TO contact the protected person(s), personally, electronically, by phone, in writing, or through a third party, without the express written permission of this court, except for (circumstances): Terald Davis.

3) NOT TO go within 200 [feet] . . . of the protected person(s), without the express written permission of this court . . . .

4) NOT TO go within one hundred (100) yards of the residence, apartment complex, or multiple family dwelling of the protected person(s) . . . .

5) TO STAY AWAY from the protected person(s) place of employment/school and to not interfere in any manner with such employment/school . . . .

The trial court designated the protective order as being effective through April 3, 2016, but further designated each of these five orders as "Does not

expire." The trial court also ordered Mr. Williams to pay court costs and "not to own or possess a firearm or any ammunition." Mr. Williams appealed.

**ASSIGNMENTS OF ERROR**

Mr. Williams assigns the following as errors committed by the trial court in granting the protective order in favor of Ms. Davis:

1. The Court misinterpreted the burden of proof Rebecca was required to demonstrate which constitutes legal error and warrants a *de novo* review of the record.

2. The Court considered a past incident of alleged domestic abuse which is an abuse of discretion since the matter had been dismissed with prejudice.

3. The Court erred in granting a [p]rotective [o]rder on behalf of a non-party especially considered [sic] no one pleaded for a [p]rotective [o]rder to be issued on behalf of a non-party.

4. The Court committed legal error in granting a [p]rotective [o]rder indefinitely.

**DISCUSSION**

Mr. Williams complains that the trial court erred in awarding the relief it granted Ms. Davis. Mr. Williams contends domestic abuse is limited to the definition contained La.R.S. 46:2132(A)(3), which defines domestic abuse, in part, as "physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana." The definition of abuse also provides that domestic abuse "includes but is not limited to . . . abuse and any offense against the person as defined in the Criminal Code." *Id*.

Louisiana Revised Statutes 46:2136 provides, in pertinent part:

A. The court may grant any protective order or approve any consent agreement to bring about a cessation of abuse of a party, any minor children, or any person alleged to be incompetent, which relief may include but is not limited to:

1) Granting the relief enumerated in [La.]R.S. 46:2135.

Section 2135(A)(1) provides:

> A.  Upon good cause shown in an ex parte proceeding, the court may enter a temporary restraining order, without bond, as it deems necessary to protect from abuse the petitioner, any minor children, or any person alleged to be an incompetent.  Any person who shows immediate and present danger of abuse shall constitute good cause for purposes of this Subsection.  The order may include but is not limited to the following:
>
> (1)  Directing the defendant to refrain from abusing, harassing, or interfering with the person or employment or going near the residence or place of employment of the petitioner, the minor children, or any person alleged to be incompetent, on whose behalf a petition was filed under this Part.

Citing *Culp v. Culp*, 42,239 (La.App. 2 Cir. 6/20/07) 960 So.2d 1279, Mr. Williams argues the communications between him and Ms. Davis and between him and her husband do not rise to the level of domestic abuse.  In doing so, he explains that this is the fourth protective order Ms. Davis sought to obtain against him and that the three previous protective orders were dismissed.  He further explained that Ms. Davis's requests for TROs and protective orders followed proceedings in which he sought to obtain custody of their daughter.

Mr. Williams likens the situation here to the situation presented in *Culp*, where the court determined the evidence supported a finding of general harassment by the defendant father but not domestic abuse.  The court determined the alleged abuse occurred when the defendant "flung" a belt in the direction of his ex-wife and child after the child refused to leave with him for his scheduled visitation.  The court further determined the complained of actions did not rise to the threshold of physical or sexual abuse for purposes of the Domestic Abuse Assistance Law

and concluded the trial court's issuance of a TRO and a protective order constituted an abuse of discretion.

Mr. Williams, Ms. Davis, and S.A., Ms. Davis's twelve-year-old daughter,[2] testified at the hearing in this matter. Ms. Davis testified that Mr. Williams had made threats against her life on August 15, 2014, in a phone conversation with her and in text and Facebook messages to her husband. She also testified regarding past occasions where Mr. Williams threatened her, including an occasion when Mr. Williams had previously threatened her with a gun when she went to his home in Houston, Texas. Ms. Davis acknowledged the protective order she sought in connection with that incident was denied but explained that the trial court denied the protective order, stating she should have left the defendant's driveway.

S.A. corroborated her mother's testimony that Mr. Williams threatened her mother. S.A. testified that on August 15, 2014, her mother was talking on the phone to Mr. Williams and had him on speakerphone. She further testified that during the conversation, Mr. Williams stated that her mother was going to die soon and that he was going to "be the one to do it." S.A. also testified that she had never seen Mr. Williams with a gun, but she had previously heard him threaten to shoot her mother when talking on the phone. S.A.'s testimony included events that occurred prior to August 15, 2014.

Counsel for Mr. Williams objected to testimony regarding events that occurred prior to August 15, 2014, because those prior events had been the subject of TROs and protective orders sought by Ms. Davis in proceedings filed in 2006, 2010, and 2012, that were dismissed with prejudice. The trial court allowed the testimony over the objection.

---

[2]The daughter who testified at the hearing is not the child of Ms. Davis and Mr. Williams.

After considering the testimony, the trial court found Ms. Davis and S.A. to be credible. The trial court then concluded Ms. Davis established a pattern of past and present abuse that constituted an "immediate and present danger of abuse" and that Ms. Davis "had good and reasonable grounds to fear for her safety."

The trial court has wide discretion in the issuance of protective orders. *Mitchell v. Marshall*, 02-15 (La.App. 3 Cir. 5/1/02), 819 So.2d 359. The abuse of discretion standard of review governs our review of a trial court's issuance of a protective order. *Francois v. Francois*, 06-712 (La.App. 3 Cir. 11/2/06), 941 So.2d 722.

The trial court's grant of the protective order was based on a credibility determination. Appellate courts must give deference to a trial court's findings of fact when those findings are based on a reasonable credibility evaluation if the record "furnishes a reasonable factual basis for the trial court's finding." *Marange v. Custom Metal Fabricators, Inc.*, 11-2678, p. 7 (La. 7/2/12), 93 So.3d 1253, 1258 (quoting *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973)). If "there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id.*

We have reviewed the record and find that the trial court did not commit manifest error in concluding that Ms. Davis's testimony that Mr. Williams threatened her with serious harm on August 15, 2014, was credible and constituted an immediate and present danger of abuse that warranted the grant of a protective order. In the hearing before the hearing officer who extended the TRO issued in this matter, Ms. Davis complained that Mr. Williams continued to seek custody of their daughter, even after his requests were denied, and that he continually

6

harassed her and her husband. She testified before the hearing officer that on August 15, 2014, after calling her "out of the blue," Mr. Williams told her that "I would die, and I was going to die soon." She also testified that Mr. Williams stated in texts and Facebook messages to her husband that she was going to die.

Terald Davis, Ms. Davis's husband, testified before the hearing officer. He denied that Mr. Williams threatened Ms. Davis when texting and messaging him on August 15, 2015. Mr. Davis testified "I didn't receive any messages saying what he'll do to [Ms. Davis]." Ms. Davis interjected that Mr. Davis did not remember everything that transpired that day, stating Mr. Davis had received such messages and she had all the texts.

Mr. Williams testified that the controversy on August 15, 2014, arose when he called Ms. Davis to speak to their daughter. According to him, Ms. Davis told him she would have their daughter call him, but when his daughter had not returned his call in three hours, he contacted Ms. Davis again. At that time, the argument at issue ensued. He denied ever threatening Ms. Davis with death or a gun. Mr. Williams lived in Houston prior to and at the time the events at issue here occurred.

The hearing officer reviewed some of the text messages that Ms. Davis claimed were death threats against her. The texts and messages contained derogatory comments between the parties. The hearing officer extended the TRO for an additional seventy-five days, finding "the language in the text messages highly offensive, abusive for both of y'all frankly." When questioned by counsel for Mr. Williams what he found to be a threat, the hearing officer stated that he determined a message by Mr. Williams, "you going to die, ride ho's ass to the end of the Earth," was credible evidence of a threat against Ms. Davis's life. It is

unclear from the evidence presented at the hearing whether this message was sent to Mr. Davis or Ms. Davis.

At the hearing on the protective order, Ms. Davis, S.A., and Mr. Williams testified. The parties' testimony was essentially the same as it was at the previous hearing. S.A. corroborated her mother's testimony that Mr. Williams made death threats against her. Although S.A. testified that her mother had the phone on speaker, she could not testify to any other details of the conversation between her mother and Mr. Williams.

The evidence shows a long history of bitter discord between Ms. Davis and Mr. Williams that revolves around the custody and/or visitation of their child. Ms. Davis complained that Mr. Williams unsuccessfully sought custody of the child on more than one occasion and argued that he would not let her get on with her life. Ms. Davis continuously sought to rely on events that occurred up to eight years prior to the events at issue as support for her claims in this matter, although the protective orders she sought on the bases of those alleged events had been denied.

Mr. Williams testified without challenge that Ms. Davis's previously asserted claims of abuse and requests for protective orders occurred after he sought custody of their daughter. Counsel for Mr. Williams explained that Ms. Davis had previously obtained three TROs against him, but permanent protective orders were denied. Counsel further explained those proceedings were dismissed with prejudice after a hearing. Ms. Davis did not deny that her prior attempts to obtain protective orders were denied and testified the trial courts determined in those proceedings that she did not prove her claims.

The trial court found Ms. Davis to be credible. In doing so, the trial court stated it was concerned that a previous protective order was denied when Mr. Williams allegedly threatened Ms. Davis with a gun. Prior actions can be considered for purposes of the issuance of a protective order. *Okechukwu v. Okechukwu*, 13-1421 (La.App. 3 Cir. 5/21/14), 139 So.3d 1135, *writ denied*, 14-1276 (La. 9/26/14), 149 So.3d 266. However, the alleged gun incident occurred more than two years prior to the incident at issue here, and a protective order on the basis of those allegations was denied and dismissed with prejudice. Therefore, the matter was res judicata, La.R.S. 13:4231, and the trial court's reliance on those facts as a basis for granting a protective order here was improper.

The totality of the evidence shows the trial court's finding Ms. Davis to be a credible witness is not reasonable. As noted above, Ms. Davis heavily relied on events at issue in prior proceedings. Additionally, in the hearing before the hearing officer, Ms. Davis interjected when her husband denied that Mr. Williams made threats against her life to him and attempted to change the effect of his testimony denying Mr. Williams threatened Ms. Davis in texts and messages to him.

Her behavior in that hearing and the denial of three prior protective orders also raises concern that S.A.'s testimony was coached or at the least swayed by her mother. S.A. was unable to answer direct questions regarding threats Mr. Williams made to her mother on August 15, 2014, and stated she was not paying attention. As with Mr. Davis's testimony in the prior hearing, Ms. Davis attempted to diminish S.A.'s lack of knowledge, interjecting that S.A. did not understand the question. Accordingly, we find the trial court's determination that S.A. was a credible witness is not reasonable based on the record before us.

For these reasons, we conclude the evidence does not warrant a protective order and reverse the protective order granted in favor of Ms. Davis and against Mr. Williams.

## DISPOSITION

The Protective Order issued against Damien Williams is reversed. All costs of this proceeding are assessed to Rebecca Davis.

**REVERSED.**