Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,311-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

AMMER GAYLE WHATLEY                    Plaintiff-Appellee

versus

FARRAN GARRISON                        Defendant-Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 85,416

Honorable Amy Burford McCartney, Judge

* * * * *

CARMOUCHE, BOKENFOHR,               Counsel for Appellant
BUCKLE & DAY
By: Amy Gardner Day

WEEMS, SCHIMPF, HAINES              Counsel for Appellee
& MOORE, APLC
By: Kenneth P. Haines

AMMER GAYLE WHATLEY                  In Proper Person

* * * * *

Before, COX, STEPHENS, and ELLENDER, JJ.

**COX, J.**

This appeal arises from the 42ⁿᵈ Judicial District Court, DeSoto Parish, Louisiana. The appellant, Farran Garrison, appeals the district court's ruling granting a protective order against her, prohibiting contact with each of her five minor children and her mother until May 23, 2036. For the following reasons, we affirm the district court's ruling in granting the protective order but reverse and amend to reduce the duration of the order to the maximum allowable period of 18 months.

## FACTS

On August 26, 2024, Ammer Gayle Whatley ("Whatley"), Garrison's mother, filed a petition for protection from abuse pursuant to the Protection from Family Violence Act under La. R.S. 46:2131 on behalf of herself and Garrison's five minor children: A.M. (DOB: 12/20/10), G.S. (DOB: 9/5/12), L.M. (DOB: 3/20/17), and A.G. and J.G. (DOB: 5/23/18).

Whatley alleged Garrison was physically abusive toward her and the minor children, and that Garrison suffered from bouts of anger and needed counseling for untreated PTSD. In support, Whatley cited several incidents of Garrison's abuse, including an occasion in which Garrison threw a helmet at G.S., and struck him with a phone cord. Whatley also claimed that on August 10, 2024, Garrison struck her face; on another occasion, A.M. had to call the police because Garrison physically and verbally abused her, which led to Garrison being arrested for domestic abuse battery with child endangerment.

A temporary restraining order was issued August 26, 2024, and a hearing on the matter occurred September 30, 2024, wherein the following testimony was presented:

In explaining the events that led to her filing the protective order, Whatley stated that while she and her husband Gary Whatley ("Gary") were on vacation, A.M. called and stated that Garrison had been arrested after she struck A.M. during an argument about A.M.'s cellphone. Whatley stated she took custody of the children when she returned because Garrison was in jail, and A.M. and G.S. were afraid and expressed that they did not want to see Garrison, noting that A.M. had referred to her home as a "hell house."

Whatley then recalled instances in which she believed Garrison had either neglected or failed to provide the children with proper care. Whatley testified that as it concerned the children's education, they were behind, at least in part, because Garrison removed them from school, where they were given structure. Whatley stated that although the children were enrolled in a home school program, Garrison failed to implement the program. Whatley testified that prior to Garrison's decision to home school, teachers had to call her because they could not get in contact with Garrison, that Garrison failed to help with or facilitate homework assignments and on several occasions, had to ensure the children got to school.

Whatley further testified that Garrison lives in a mobile home located on her property, approximately 100 yards from her home. She stated that when the children would come to her home, they were often dirty and hadn't eaten. Whatley also testified that A.M. was often left in charge of the other children when she was only 11 years old.

Regarding instances of abuse, Whatley recalled an incident in which Garrison repeatedly hit her while the children were present, leaving bruises on Whatley's arm, and yet another instance when Garrison threw a jar of preserves at Gary. Concerning abuse toward the children, Whatley testified

2

that Garrison hit G.S. on the head and struck him with a phone cord, and she noticed a handprint on his back as well as other marks. Whatley also stated that she witnessed Garrison slap A.M., leaving scratches, and observed moments where Garrison was verbally abusive toward the children.

On cross-examination, Whatley clarified that while there was a video of the altercation between A.M. and Garrison which led to Garrison being arrested, she had not seen it. Whatley stated that she could not attest to the amount of food Garrison had in her home and could only testify about the number of times she knew that the children had come to her home claiming that they were hungry. In discussing the August 10, 2024, incident in which Whatley claimed Garrison struck her face, Whatley explained that she had gone to Garrison's home because she believed G.S. had stolen something.

Whatley admitted she had been yelling at that time but not only had Garrison gotten upset enough to strike her face but to push her down the steps of Garrison's home. Whatley stated that after the incident, she could not feel her face, arms, or hands for a week. Whatley stated that the abuse between Garrison and the children had been happening for about five years and that she had not called Child Protective Services because the children could come to her home if needed. Whatley then admitted that she was aware that the eldest child had lied before, and that she was unaware A.M. was diagnosed with oppositional defiant disorder.

Whatley testified she believed Garrison has issues controlling her anger and suffers from undiagnosed or untreated PTSD. Whatley stated that she believes Garrison is intelligent, but lacks the compassion needed to take care of her children, which has led to physical abuse. Whatley, however, expressed that, despite her concerns, she wants Garrison to be able to raise

3

and care for her children, and she and her husband would provide support as needed.

Next, Leland McNabb ("McNabb"), Garrison's father, testified that on the day A.M. called the police following the altercation with Garrison, he received a call from A.M. who told him that Garrison slapped her face, and shoved her into the refrigerator. McNabb explained that when he arrived at Garrison's home, officers told him that A.M. recorded the incident, and after reviewing it, found it sufficient to arrest Garrison. McNabb stated he took the children and fed them because they had not eaten that day, and that A.M. and G.S. had not eaten since the day before the incident.

In discussing past abuse, McNabb testified that A.M. and G.S. had told him several times that Garrison hurts them, they do not like Garrison, and do not want to live with her. He stated that he was aware that both A.M. and G.S. have nightmares about their mother, and that A.M. still wets the bed. Finally, in discussing his relationship with Garrison, McNabb admitted that he was not close with his daughter because of her anger issues. On cross-examination, McNabb admitted that although he lives approximately ten minutes away from Garrison, he does not visit or see her very often. He also admitted that he was not concerned about the welfare of the children until A.M. and G.S. reported that they had been abused, and when A.M. expressed that she was miserable and tired of taking care of the other children and wanted to go back to school.

Gary then testified that from his observations, Garrison's home was not a healthy environment for the children because Garrison and her husband had frequently argued in front of the children. Gary also stated that several decisions Garrison made had a negative impact on the children, most

notably, her decision to remove them from school, which took the children away from much-needed structure and put them behind in their respective age groups. Gary then testified that Garrison's anger was an issue, and noted that on one occasion, he received a call from Whatley that Garrison had pushed her off the porch.

Garrison was then informed of her right not to testify because of her pending criminal charges. Although Garrison stated that she did not want to waive her right against self-incrimination, she still provided a statement in which she generally denied that she ever physically abused her children. Garrison noted that although Whatley described several incidents of alleged abuse, no dates were provided as to those incidents, and no injuries were recorded or presented as evidence. Garrison further noted that Whatley, Gary, and McNabb were not present when the incident occurred with A.M. that led to her arrest, so they could not provide accurate testimony about the incident.

Garrison testified that she does not have trouble controlling her anger, but instead, has trouble with Whatley respecting the boundaries she sets for the children. Garrison stated that, for example, Whatley disagreed with her decision to home school the children even after Garrison experienced issues with teachers, and Whatley could not accept that decision. Garrison stated that despite the accusations that the children are behind in school, she has been proactive with them and taken them to counseling to address any issues they may have, such as G.S.'s ADD diagnosis, and A.M.'s anxiety. Garrison also noted that Whatley purchased A.M. a cellphone even after she expressed that she did not want A.M. to have one at her age.

5

In addressing the allegations of abuse and neglect, Garrison testified that she disciplines her children but has never done so by throwing objects at them. Garrison testified that she provides her children with food, and that whenever the children would go to Whatley's home it was to avoid doing chores or to watch television, use the internet, get treats, or avoid eating the meals she prepared. Garrison noted that the children would often lie to Whatley so they could have their way, and Whatley would simply believe them without speaking with her first. Garrison stated that after her parents divorced, she helped take care of her younger siblings, so it was not out of the ordinary for her to ask A.M. to help care for her siblings; importantly, it is not Whatley's position to overrule that decision or any of the other rules she implements for the children.

Garrison then addressed the incident in which Whatley alleged that Garrison pushed her. Garrison testified that Whatley had come to her home even though she asked Whatley not to. She stated that Whatley had yelled at G.S., and although Garrison had attempted to calm the situation, Whatley continued to yell, and Garrison yelled back at Whatley to defend G.S., and Gary called the police. Garrison testified that she is concerned about speaking out against her mother because Whatley is an upstanding member of the community, and no one would believe her over Whatley. Garrison denied that she abuses drugs and alcohol, stated that she is in counseling, expressed that she loves her children, and would never hurt them.

At the conclusion of the testimony, the district court granted the protective order and gave Whatley temporary custody of the children. The district court also ordered Garrison: 1) not to have contact with Whatley or any of the five children; 2) not to come within 100 yards of either Whatley

6

or any of the five children; and 3) to complete both anger management and parenting classes.  The order was made effective until May 23, 2036, when the youngest children would turn 18 years old.

This appeal followed.

## DISCUSSION

On appeal, Garrison argues that the district court erred in granting the protective order because the allegations asserted in the petition did not rise to the threshold of physical abuse, and the testimony presented at the hearing was largely unrelated to the allegations outlined in the petition.

Garrison further argues that even if the district court did not err in granting the protective order, it nevertheless erred in providing that the order be made effective until May 23, 2036, in excess of the 18-month statutory time period set forth in La. R.S. 36:2331(F).

Under the Domestic Abuse Assistance Act ("DAAA"), a court may issue a protection order pursuant to La. R.S. 46:2131 et seq.  The intent of the Act is to provide a civil remedy of immediate and easily accessible protection to endangered persons from domestic abuse.  *Bagwell v. Bagwell*, 55,492 (La. App. 2 Cir. 4/10/24), 383 So. 3d 1159.  Both La. R.S. 46:2135 and 46:2136 require that there be "good cause shown" for the issuance of a protective order.  "Good cause shown" is defined in La. R.S. 46:2135 as a showing of "immediate and present danger of abuse."  Additionally, domestic abuse includes, but is not limited to, physical or sexual abuse or any offense against the person as defined in the Louisiana Criminal Code, except negligent injury and defamation, committed by one family member or household member against another.  La. R.S. 46:2132(3).  The court may

7

grant a protective order to bring about a cessation of abuse of a party. La. R.S. 46:2136(A).

A trial court's decision regarding a protective order is subject to abuse of discretion review. *Spillers v. Senn*, 54,521, (La. App. 2 Cir. 5/25/22), 339 So.m3d 778. This court provided:

> In the area of domestic relations, much discretion is vested in the trial judge, particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of credibility of witnesses. When findings of fact are based upon a decision regarding credibility of witnesses, respect should be given to those conclusions, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on understanding and believing what is said.

*Id*. at 781, citing *Larremore v. Larremore*, 52,879 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1282.

A court "may grant any protective order. . . to bring about a cessation of domestic abuse. . . or the threat of danger thereof." La. R.S. 46:2136(A). Family arguments that do not rise to the threshold of physical or sexual abuse or violations of the criminal code are not in the ambit of the DAAA. *Culp v. Culp*, 42,239 (La. App. 2 Cir. 6/20/07), 960 So. 2d 1279, *writ not cons*., 07-1836 (La. 10/5/07), 964 So. 2d 378. The trial court, sitting as a trier of fact, is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be disturbed on appeal absent manifest error. *Bagwell v. Bagwell*, 55,492 (La. App. 2 Cir. 4/10/24), 383 So. 3d 1159. Additionally, a trial court is granted broad discretion in its rulings on evidentiary issues which will not be disturbed on appeal absent a clear abuse of that discretion. *Id*. A party seeking a protective order under the DAAA must establish the necessary facts by a preponderance of the evidence. *Id*.

8

We note that, in this case, the parties involved appeared in proper person and the record before us is limited. However, upon our review of the record, and the testimony therein, we find that the district court did not err in determining that Whatley satisfied her burden of proving that a protective order was warranted in this case.

Specifically, testimony was presented that Garrison had difficulty regulating her anger, resulting in physical or verbal altercations. Whatley testified that during at least two different arguments, Garrison had either hit or pushed her to such a degree that it left bruises or rendered Whatley's arm numb. Further testimony was provided that Garrison had thrown objects at others and had hit G.S. with a phone cord and a helmet. Both Whatley and McNabb testified about the effect that living with Garrison has had on the children, noting instances of bedwetting, marks, scratches, or handprints from being struck, and reports from the children that Garrison hurts them. Notably, testimony was also given regarding the physical altercation between Garrison and A.M. Testimony revealed that Garrison hit A.M. and slammed the child into a refrigerator, which resulted in Garrison's arrest for domestic abuse battery with child endangerment.

Given the totality of the testimony provided and that the district court was in the best position to evaluate and observe the demeanor of the parties involved, we find that the district court did not err in granting the protective order.

Next, we address the issue of whether the district court erred in suspending Garrison's rights to have any contact with the children until the youngest, A.G. and J.G., are 18 years old. In the present case, the protective order was issued September 30, 2024, and made effective until May 23,

2036, such that the order would be in effect for approximately 11 years. In this regard, we agree with the appellants that the district court's order is essentially a *de facto* termination of her parental rights. In issuing the order, the district court specified that that the order would be enforced:

> Until the youngest children turn eighteen; however, there is the opportunity for modification of that by complying with the conditions. So[,] we're going to come back in April. We're going to see if you've complied with the conditions that have been set forth. If you have, then we can begin with some sort of supervised visitation to try and work you back to the point of having custody of your children in a safe manner.

La. R.S. 46:2136(F), as part of the Domestic Abuse Assistance Act, provides:

> Any final protective order or approved consent agreement ***shall be for a fixed period of time, not to exceed eighteen months, and may be extended by the court, after a contradictory hearing, in its discretion***. Such protective order or extension thereof shall be subject to a devolutive appeal only. (Emphasis added).

La. R.S. 46:2136(F) specifies that any final protective order cannot exceed 18 months. However, under La. R.S. 46:2136(F)(2)(b), the court *must* conduct a hearing for a motion to issue an indefinite protective order and shall hold the hearing concurrently with the hearing for the rule to show cause why the protective order should be issued.

In this case, no contradictory hearing was held prior to the court issuing the protective order preventing Garrison from having any contact with the children. While the district court may, after a hearing is conducted, extend the fixed period of time, it may not do so prior to the hearing.

Accordingly, we find that the court erred in ordering the effective date of the order to be May 23, 2036, 11 years after the order was issued. We therefore affirm the district court's ruling which granted the protective order

10

and remand for the district court to reduce the fixed time to the maximum allowable time period in accordance with La. R.S. 46:2136(F). On remand, the district court is also ordered to conduct such hearings as necessary to ensure all parties involved are protected, and to determine whether Garrison has complied with the district court's conditions as set forth in the protective order.

If the district court determines, after a contradictory hearing, that Garrison has not satisfied the conditions of the protective order, or that the children would not be in a safe environment, then the court may issue any necessary orders to protect the children.

## CONCLUSION

For the reasons stated herein, the district court's grant of the protective order is affirmed and amended in accordance with this opinion. Parties are to bear their own costs associated with this appeal.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.**